### ST. LOUIS & S. F. R. CO. v. TEEL.

No. 10024—Opinion Filed April 12, 1921.

Rehearing Denied May 17, 1921.

(Syllabus.)

**1. Negligence—Question for Court or Jury.**

Where, from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence, such question is properly for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the courts.

**2. Appeal and Error—Questions of Fact—Review—Question of Trespasser or Licensee.**

Where, as in the case at bar, the question whether the injured person was a trespasser or a licensee was properly submitted to the jury on conflicting evidence under instructions which correctly stated the law, the verdict of the jury and the judgment rendered thereon will not be disturbed on appeal.

**3. Railroads—Injuries to Persons Near Track—Sufficiency of Evidence—Instructions—Harmless Error.**

Record examined, and held: (1) That the evidence reasonably tends to support the verdict of the jury and the judgment rendered thereon. (2) That the instructions to the jury given by the court fairly cover the issues of law joined by the pleadings and evidence. (3) That the remaining errors complained of are either without merit or are harmless under section 6005, Rev. Laws 1910.

Error from District Court; Lincoln County; Chas. B. Wilson, Jr., Judge.

Action for personal injuries by Irene Teel, a minor, by her stepfather and next friend, H. W. Spraker, against the St. Louis & San Francisco Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. F. Evans, R. A. Kleinschmidt, and J. H. Grant, for plaintiff in error.

C. Caldwell, for defendant in error.

KANE, J. This was an action for damages for personal injuries, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below. Hereafter, for convenience, the parties will be called "plaintiff" and "defendant," respectively, as they appeared in the trial court.

The record discloses that on the date of the injury Irene Teel, the injured person, and her mother were proceeding by foot from one point to another of the city of Vinita and had reached the intersection of the Katy and Frisco railways, where they were standing in a traveled way waiting for a Katy freight train to clear the crossing, which would enable them to continue their journey to their home in the northeast part of the city, which was their objective, when the injury occurred. At this point the Katy tracks run almost due north and south and the Frisco tracks run almost due east and west. The injured person and her mother were standing immediately south of the Frisco tracks and a few feet west of the Katy tracks. While thus standing a Frisco passenger train, moving west, ran into the Katy freight train, which was moving north over the crossing, turning over a box car loaded with lumber upon the plaintiff and her mother, killing the latter and very seriously injuring the former. The specific act of negligence charged against the defendant is stated in plaintiff's petition as follows:

"That the agents, offficers, servants and employees of the said defendant and who was in charge of said passenger train could see, did see, and by the use of ordinary care should have seen and could have seen the said freight train on said crossing at least one-half mile east of said crossing, and could have stopped and should have stopped said passenger train before reaching said crossing and before it struck said freight train, but they wantonly, carelessly, negligently and with gross negligence failed, refused, and neglected to stop said passenger train until after it struck the said freight train and caused said injury to the said Irene Teel in the manner aforesaid."

The answer of the defendant set up: (1) A general denial; (2) contributory negligence; and (3) that the plaintiff was a tres-

passer on the premises of the defendant, and therefore the only duty which the defendant owed her was to refrain from wantonly and willfully injuring her while upon its premises. The reply was a general denial.

Upon the issues thus joined there was trial to a jury, which returned a verdict in favor of the plaintiff, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

Counsel for defendant summarize their grounds for reversal in their brief as follows:

(1) The verdict of the jury is not sustained by sufficient evidence.

(2) Error of the court in overruling said plaintiff in error's demurrer to the evidence of defendant in error.

(3) Error of the court in refusing to direct a verdict in favor of the defendant at the close of all the evidence.

(4) Error of the court in refusing certain instructions requested by defendant and in refusing to give each of said instructions.

(5) Error of the court in giving to the jury certain instructions and in giving each of said instructions, which were duly excepted to by plaintiff in error.

(6) Error of the court in refusing to submit to the jury defendant's defense of contributory negligence and in refusing to instruct the jury on the question of contributory negligence as raised by the defendant's answer.

As the first, second, and third assignments of error question the sufficiency of the evidence to support the verdict of the jury and the judgment rendered thereon, they may be considered together. As we view the record there is no substantial conflict in the evidence of the respective parties on the merits on any material point. Both parties concede that the injury occurred substantially as hereinbefore set out, and it is not seriously questioned that these facts, standing alone, make a case which entitles the plaintiff to recover. Without contradicting the evidence adduced by the plaintiff, the defendant relies for a defense upon certain evidence introduced on its behalf which, it says, conclusively shows that the injury was the result of an unavoidable accident. This defensive evidence, which for the purpose of the question now under consideration we will assume was uncontradicted, is summarized from the testimony of the engineer in charge of the passenger train and shows substantially the following state of facts:

The engineer testified that when his train was within about a half mile of the Katy

crossing he heard an unusual noise somewhere about his engine and immediately shut off the steam; that almost immediately thereafter he heard a loud report, which proved to be caused by the bursting of the steam pipe which runs from the valve to the lubricator; that when this pipe broke the steam was thrown against the window of the cab a foot or a foot and a half from his face, and it struck with such force that it glanced from the window slightly scalding his face, whereupon he jumped from his seat and ran to the gangway to get some air; that upon reaching the gangway he looked ahead and saw the Katy freight train on the crossing and immediately ran back to the cab to turn the air brake valve which would stop the train, but found it was so hot he could not do this; that during his effort to find the air brake he saw the lever, which he pulled into reverse, thus tending to slow the train a little, not a great deal. In answer to the question, "Could you have done anything else to have brought this train to a stop than what you did?" he answered, "Not a thing; nothing I could do to stop it." After throwing the lever into reverse the engineer jumped from his engine and escaped unhurt.

The testimony of this and other witnesses described the gangway, the engine and cab, location of the whistle and automatic bell and how the train was equipped with air brake, location of lubricator and brake valve, and their functions. This evidence discloses that the air brake valve was right in front of where the engineer was sitting when the explosion occurred; that his knee was right against the brake valve on this engine and a little higher than his knee; that the brake valve has a little handle, and to put on air you just move it around; that it is easy to turn; that the engineer had been running the same train for 16 years and had turned the air brake valve so often that it had become second nature to him.

The following questions and answers form part of the cross-examination of the engineer and give his explanation of why he did not turn the air brake valve before leaving the cab immediately upon hearing the explosion:

"Q. Oh, after the pipe bursted you reached up and shut off the throttle? A. I just shut off the throttle and jumped off the seat box. Q. Why didn't you scoot your hand out there and shut off the air? A. I don't know why I didn't do that. I thought of getting out of there like any other man would do if hot steam would strike you in the face. Q. You did think of the throttle, you say? A. Well, that is natural for a man to shut

the throttle off; a man would shut the throttle off if he got a bullet in his head. Q. He would also shut off the air too? A. May be he would and may be he wouldn't; I didn't at this time."

The engineer also testified as follows:.

"Q. Where did you expect that train to stop? A. Where? Q. Where did you expect it to stop? A. Where did I expect it to stop? Q. Where did you expect that train to stop when you turned it loose full of passengers? A. I didn't have any expectancy about it. Q. And you just turned that train loose in the city of Vinita loaded with passengers? Just let it go through town wild, did you? A. That is what I done; I couldn't do anything else."

Clearly this defensive evidence, conceding that it was undisputed, did nothing more than join an issue of fact for the jury on the question of negligence. The act of negligence complained of, as we have seen, was the failure of the engineer to stop his train in time to avoid the injury. It is conceded that the engineer did not stop his train as ordinarily it would have been his duty to do before reaching the crossing. But counsel say the uncontradicted testimony of the engineer conclusively shows that he did everything to avert the collision that could be expected of a reasonably prudent man placed in his circumstances. The engineer, very likely, thought he did everything he could to stop his train, as he testified in several instances that "I couldn't do anything else." but this was merely a conclusion of fact, and the jury after hearing all the evidence drew a different conclusion of fact. In our judgment the conclusion reached by the jury is amply supported by the evidence. While we do not feel disposed unduly to criticise the action of the engineer. in the difficult situa tion that confronted him we cannot help feel ing that he did not sustain the best traditions of his trade or craft. We cannot conceive of a situation more fraught with serious consequences to life and limb than turning a heavily laden passenger train loose to run wild through a populous city in close proximity to another railroad crossing which the engineer knew he was approaching. While we are not called upon to say whether or not the engineer acted as an ordinarily prudent man would act in the same situation, that being a question of fact for the jury. we have no hesitation in saying that we cannot suppress a feeling of disappointment After hearing the engineer's testimony the jury, correctly we think, reached the conclusion that an ordinarily prudent engineer would have turned the brake valve before

leaving the cab, which it was shown would have stopped the train and entailed no additional risk to the engineer. We are unable to understand why the engineer did not do this, unless he unconsciously furnishes an explanation in his answer to the foregoing questions. When asked, "Why didn't you scoot your hand out there and shut off the air?" he answered, "I don't know why I didn't do that; I thought of getting out of there like any other man would have if hot steam would strike you in the face." This is the point, no doubt, where the jury and the witness draw different conclusions of fact from practically the same testimony. It probably appeared to the jury that the engineer was thinking too much of his own safety and not enough of the safety of others encrusted to his care or who were likely to be killed or injured by his conduct. The engineer said, "I thought of getting out of there," and concludes that this was "like any other man would do if hot steam would strike you in the face." The jury probably concluded that an ordinarily prudent engineer would have thought of the terrible consequences to others and turned on the air, which was right at hand. This would have taken but a fraction of a second, and it seems to us that it would have been the natural and ordinary thing to do. The engineer testified that it was natural for an engineer to shut off the steam, as he did, but when confronted with the question, "He would also shut off the air?" he answered, "May be he would and may be he wouldn't; I didn't this time." The jury definitely answered the question in the affirmative. In this state of the record we are convinced that the assignments of error now under consideration are without merit.

It is well settled in this jurisdiction that:

"Where, from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence or contributory negligence, such questions are properly for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." Sans Bois Coal Co. v. Janeway, 22 Okla. 425, 99 Pac. 153.

In the assignments of error questioning the action of the court in giving and refusing to give certain instructions it is sufficient to say that we have examined the record carefully and are of the opinion that the instructions given by the court fairly cover the issues of law joined by the pleadings and the evidence and were substantially correct.

This record, stripped of its impedimenta, presents a case of no great difficulty. The defendant does not seriously question the material evidence of the plaintiff tending to show how the injury occurred, and while the plaintiff does seriously question the defensive evidence of the engineer, we may assume that it was uncontradicted for the purpose of this discussion. This evidence presents this issue of fact: Did the engineer exercise such care in the circumstances as an ordinarily prudent engineer would exercise to avoid the injury? This, as we have seen was a question of fact for the jury, which they answered in favor of the plaintiff. There being evidence reasonably tending to support the conclusion of fact reached by the jury, we are not at liberty to disturb it on appeal. It is also well settled that where, as in the case at bar, the question whether the injured person was a trespasser or a licensee was properly submitted to the jury on conflicting evidence under instructions which correctly stated the law, the verdict of the jury and the judgment rendered thereon will not be disturbed on appeal. Littlejohn v. Midland Valley Ry. Co., 47 Okla. 204, 148 Pac. 120; New York Plate Glass Co. v. Katz, 51 Okla. 713, 152 Pac. 353; C., R. I. & P. R. Co. v Felder, 56 Okla. 220, 155 Pac. 529; M., K. & T. Ry. Co. v. Wolf, 76 Okla. 195, 184 Pac. 765; C., R. I. & P. Ry. Co. v. Schands, 57 Okla. 688, 157 Pac. 349.

On the last assignment of error, it appears that while it is quite true that the defendant set up the defense of contributory negligence in its answer, this defense seems to have been abandoned on the trial of the cause, as there was no evidence offered tending to establish it. In these circumstances the failure to instruct the jury on the question of contributory negligence was not reversible error. In this jurisdiction it is no every error of this class that will justify a reversal of the judgment of the trial court. Section 6005, Rev. Laws 1910, provides as follows:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal on the ground of misdirection of the jury or the improper admission or rejection of evidence or as to error in any matter of pleading or procedure, unless in the opinion of the court to which application is made after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

After a careful examination of the entire record we are convinced that on the merits the evidence reasonably tends to support the judgment and that none of the errors complained of belonging to the class mentioned in section 6005, supra, have resulted in a miscarriage of justice or constitute a substantial violation of any constitutional or statutory right.

For the reasons stated, the judgment of the trial court is affirmed.

HARRISON, C. J., and JOHNSON, MILLER, and KENNAMER, JJ., concur.