## ATCHISON, T. & S. F. R. CO. v. HUNTER, Adm'r.

No. 24470. Sept. 10, 1935.

Rainey, Flynn, Green & Anderson and Biddison, Campbell, Biddison & Cantrell, for plaintiff in error.

Bailey E. Bell, W. Cliff Klein, and Gerald B. Klein, for defendant in error.

PER CURIAM. For convenience, the parties will be referred to in this opinion as they appeared in the trial court.

Plaintiff's petition alleged the corporate existence of the defendant, and plaintiff's appointment as administrator of the estate of Ira Hunter, deceased.

In the charging part of the petition it is alleged, in substance, that the plaintiff and deceased lived south and west of the defendant's station at Mohawk, and that north and east of said station there was located the Mohawk public school building, which was attended by the colored children in the vicinity and by adults and children for church purposes, and that for many years in the past there had been, and was at the time this action arose, a much used trail or passage-way leading from the vicinity of deceased's home north to the defendant's right of way or property line to a point some 200 or 300 yards west of the station, and thence on to said railroad premises and tracks and down past the Mohawk station, to a point

south and opposite the schoolhouse, thence north to the schoolhouse; and that this passageway or path was constantly and excessively used by the children and adults in the community, with the knowledge, consent, and acquiescence of the defendant, its agent and employees, and that said thoroughfare was the only road leading to and from the Mohawk station of the defendant; that the children used and traveled this path four times daily during school terms, and that they were often seen by the defendant's agents and employees, and that said path was being so used by the deceased and others on September 8, 1931. Plaintiff further alleged that the tracks passing said station and school are straight for a long distance; that the main line of said tracks runs almost due east and west, paralleled by side tracks, and that said main line is straight for a distance of 429 yards west of the station house, and that then there is a slight curve to the south and west, bearing off some 400 yards to a paved highway or crossing (this is known as Harvard crossing), and that about a mile west of said station, the track begins to slope and continues to do so for some distance east of said station of Mohawk, and that a train traveling east passing Mohawk would be traveling down an excessive grade. That deceased, on September 8, 1931, left the schoolhouse at the noon hour, and traveled the aforesaid path or passageway to his home, in plain view of the employees of the company installing signals at Mohawk station; that on his return to school he followed a path from his home to the point on the right of way some 200 or 300 yards west of the station, thence on to said tracks and down the main line of said tracks; that he was facing a strong wind, and that as he traveled east on said tracks and over said traveled public way, he was struck and killed by defendant's passenger train at a point a short distance east of the station house, the train traveling east; and that said train was traveling through the Mohawk station yard and vicinity at a high, dangerous, and excessive rate of speed, down said slope; that no whistle or bell was sounded for the station or crossings, and that the engineer and fireman saw deceased with his back to the train going down the middle of said track, when the train was 490 yards west or back of the said Ira Hunter, and that they knew he was in a place of peril, but gave no warning, and that they could have, but did not, stop said train, and that this was in violation of their duty to the deceased, and that the failure to warn him of his danger, and

the failure to stop said train, was the direct and proximate cause of the injury and death of Ira Hunter; and further alleged that the operation of said train at excessive speed, the failure to sound a warning on approaching the station and crossings, where the company knew, or had reason to believe, that pedestrians would likely be, constituted negligence on the part of the defendant, and that the failure to give the statutory warnings with reference to crossings at grades constituted negligence, which was the sole and only proximate cause of the injury and death of Ira Hunter, and that Ira Hunter was not guilty of contributory negligence, but that his death was caused solely and proximately by the negligence of the defendant, its agent, and employees. Then plaintiff alleged deceased's age, his contribution of labor and services to the plaintiff and their value, and that same exceeded cost of rearing and educating him, and alleged funeral expenses, and prayed for damages in the sum of $2,995.

The defendant answered with a general denial and a special plea of the deceased's contributory negligence.

The plaintiff replied to this answer with a general denial and a special denial of the contributory negligence of the deceased.

The issue thus joined, the case was tried to a jury and a verdict was returned awarding plaintiff $2,955 damages. Judgment was duly entered on the verdict.

The defendant alleges some 13 assignments of error, but briefs only five propositions for the reversal of the case, to wit:

(1) Error in overruling demurrer to plaintiff's evidence.

(2) Error in refusing to instruct a verdict for defendant at the conclusion of all of the evidence.

(3) Error in giving instructions on the last clear chance or discovered peril doctrine.

(4) Error in submitting as an issue of negligence the statutory duty to give warning at public crossings.

(5) Error in the instructions with reference to the measure of damages.

It has long been a settled rule of this court that if there is competent evidence reasonably tending to support the verdict, the same will not be disturbed on appeal, and where there is conflicting evidence, this court will not examine the same for the purpose of determining the weight thereof; but when

a demurrer is filed and an instructed verdict is requested, this court will examine the record, and if upon such examination, it is found there is no evidence reasonably tending to support the verdict and judgment, such judgment will be reversed. Gulf, C. & S. F. Ry. Co. v. Harpole, 111 Okla. 301, 239 P. 609, and if the evidence reasonably tends to support the verdict, it will not be set aside. Col ins Cotton Co. et al. v. Wooten-Burton Sales Co., 81 Okla. 67, 196 P. 681, and St. Louis-San Francisco Ry. Co. v. Rundell, 108 Okla. 132, 235 P. 491.

In keeping with these rules, we have carefully read and considered all of the evidence in this case. In passing upon the first proposition relied upon for reversal, we have carefully considered all of the plaintiff's evidence. The plaintiff, in a case of this kind, to make out a case meriting the submission of the same to a jury, is compelled to prove primary negligence. This court has many times announced the rule that, where the wrong is not willful and intentional, three essential elements must exist before the negligence is actionable, to wit: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury. (2) Failure of the defendant to perform that duty. (3) Injury to plaintiff proximately resulting from such failure. Missouri, K. & T. Ry. Co. v. Wolf, 76 Okla. 195, 184 P. 765; C., R. I. & P. Ry. Co. v. Anderson, 142 Okla. 276, 286 P. 787, and many other cases.

In a case such as this one, it is also well settled in this jurisdiction that where the facts with reference to the primary negligence of the defendant are such that all reasonable men shou'd draw the same conclusions and inferences from them, the question of negligence is one of law for the court. St. Louis-S. F. R. Co. v. Jones, 78 Okla. 204, 190 P. 385; St. Louis-S. F. R. Co. v. Teel, 82 Ok'a. 31, 198 P. 78; Gulf, C. & S. F. Ry. Co. v. Na'il, 156 Okla. 294, 10 P. (2d) 668; New York Plate Glass Ins. Co. v. Katz, 51 Okla. 713, 152 P. 353. It is equal'y as well settled that in cases where the evidence with reference to these essential elements of primary negligence is such that reasonable men might differ as to the facts and inferences to be fairly drawn therefrom, the case is one for the jury. Littlejohn v. Midland Valley R. Co., 47 Okla. 204, 148 P. 120; Chicago, R. I. & P. Ry. Co. v. Schands, 57 Okla. 688, 157 P. 349; Missouri, K. & T. R. Co. v. Wolf, 76 Okla. 195, 184 P. 765; Lancaster, Adm'x, v. St. Louis & S. F. Ry. Co., 128 Okla. 176, 261 P. 960; Roy, Adm'x, v. St. Louis-S. F. Ry. Co., 153 Okla. 270, 4 P. (2d) 1038.

From our careful examination of the plaintiff's evidence, in the light of the above and foregoing rules of law, we think that the trial court properly overruled the demurrer to plaintiff's evidence. Plaintiff's evidence discloses a state of facts and circumstances that clearly supports logical and reasonable deductions and inferences which point to the negligence of the defendant; and the plaintiff's evidence was not such as would prove or tend to prove the contributory negligence of the deceased to the extent that the trial court should have taken the case from the jury. Plaintiff's evidence shows that the deceased was struck while traveling the pathway commonly used by the deceased and other persons in the vicinity of Mohawk station; that said pathway was frequently and commonly used by the people in the vicinity, and that the agents and servants of the defendant knew, or could have known by the use of their senses, of such use; that no objections had ever been made; that no whistle or bell was sounded to warn persons who might be at and near said station or on said passageway; that the tracks were straight for a great distance west and east of said station; that deceased went on the main tracks some 200 or 300 yards west of the station, at or near train time; that deceased was traveling east facing a strong wind, and that the engine hit him in the back when he had reached a point about 100 feet east of the station house. There is no conflict between this evidence and the physical facts. This evidence was sufficien' to reasonably tend to show that the defendant was guilty of negligence. Many inferences can reasonably and logically be drawn from the evidence in favor of plaintiff's contention, and such inferences can be drawn from the established facts, and in the instant case it is not necessary to indulge in presumptions not supported by the proven fact. In this jurisdiction, primary negligence may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom. Schaff, Rec., v. Ferry, Adm'x, 105 Okla. 259, 232 P. 407; U. S. v. Ross, 92 U. S. 281, 23 L. Ed. 707. The plaintiff's evidence proved prima facie that deceased was a licensee, therefore, the defendant owed deceased a duty to keep a look out for him, and to warn and protect him from injury. Plaintiff proved prima facie that this was not done, and that deceased was killed. This proof, we think, was sufficient to go to the jury. Under plaintiff's evidence, the doctrine of the Wilhelm Case (Wilhelm v. Missouri, O. & G. Ry. Co., 52 Okla. 317, 152 P. 1088), is applicab'e. It was a jury question as to whether

or not the defendant has exercised that degree of care necessary to protect human life that was commensurate with the probability that persons might be on its tracks at said station and premises as used by the public. St. Louis-S. F. R. Co. v. Donahoo et al., 82 Okla. 44, 198 P. 81. The defendant next contends that the trial court should have sustained defendant's motion for an instructed verdict at the close of all of the testimony. With this contention, we cannot agree. The defendant pleaded contributory negligence of the deceased, and pleaded deceased ran into the side of the engine. Such a defense, under the Constitution of this state and many decisions of this court, is always a question for the jury under proper instructions, provided the plaintiff proves primary negligence and does not establish his own contributory negligence.

Furthermore, the proximate cause of an injury is a question of fact for the jury, to be determined in view of all the circumstances and evidence in the case. These rules are so well settled that we need not cite authorities. The proof in this case is such that the trial court was compelled to submit the case to the jury. The engineer testified that, as he approached Mohawk station, on rounding a curve, about a quarter of a mile from the box-car depot, he saw a man walking between the tracks. Counsel for the defendant asked him if he meant the side track and the main lines, and his answer was "yes." He further stated that the engine was 800 or 900 feet from the boy when he first saw him. On cross-examination, the engineer stated that he had been on this run for three years and he made the run every other day. Counsel for plaintiff asked him when he first saw somebody on the **track,** and he replied that he was 800 or 900 feet away, and that this man was walking down **the track.** This testimony is just as positive as his statement that he was walking **between** the tracks. He further testified that when he got close enough, until he thought the boy might be in danger, he blew the whistle. He further testified that he did not apply the brakes until he was 50 ft. past the place where the deceased was struck.

The fireman stated that he did not see anyone on the **right of way** as they approached Mohawk station, but that as they got near the station, he saw the boy when he came across the track, and that the boy was 150 feet ahead of the engine, or right at the station, and that when they got within ten feet of the boy, "he ran right into the side of the engine." The fireman also stated that the whistle was blown at the

whistle board for the station which was one-quarter of a mile west of the station, and that the whistle was not blown at the time that he saw the boy cross the track in front of the train, but that he did ring the bell. This witness, when asked if he saw the men installing the signal at the station that day, said that he did not, "that the **track** was clear all but that boy."

The engineer, on his re-direct examination, testified that he examined the engine after the accident, and there was a little dust wiped off the cylinder or steam chest head on the left side. Many witnesses for the defendant stated that the whistle was sounded and the bell rung, as the train approached the station. Plaintiff's witnesses testified that the track was down grade past the station, that the deceased went on to the main line at or near train time, and at a point 200 or 300 feet west of the station house; that both the train and the deceased were traveling east, facing a strong wind. The witness who saw the deceased go onto the track stated that the boy just had left when the train came by. This witness, when asked to estimate the time that elapsed between the time deceased went on to the main track and the time that the train came by, said that it was about five or ten minutes. Another witness for plaintiff said that the deceased was walking between the rails on the ties a little east of the station, and that the engine hit him in the back. Plaintiff's proof further shows that the deceased was killed approximately 100 feet east of the station house. Several of plaintiff's witnesses stated that no whistle was blown, and no bell rung, at or near the station house, that the train was traveling fast, 50 or 60 miles an hour, and that after the accident, the train was stopped within 600 to 800 feet. This evidence, together with the physical facts, was sufficient to merit the attention of a jury, because men of ordinary intelligence and experience might differ as to whether the negligence of the defendant, or the contributory negligence of the deceased, was the proximate cause of the death of Ira Hunter. It certainly covered conflicting theories as to how the accident happened. Clinton & O. W. Ry. Co. v. Dunlap, 56 Okla. 755, 156 P. 654; Thrasher v St. Louis & S. F. R. Co., 86 Okla. 88, 206 P. 212; Chicago, R. I. & P. Ry. Co. v. Martin, 42 Okla. 353, 141 P. 276.

The defendant next assigns error of the trial court in instructing the jury as to the last clear chance doctrine. Our examination of all of the evidence in the case and the instructions given, compels us to disagree with counsel for the defendant. The

last clear chance doctrine also known as the "humanitarian doctrine," has long been a part of the jurisprudence of this state. The doctrine is not applicable unless the danger of the injured person is actually discovered. To establish liability under this doctrine, it is necessary: (1) That the injured person be in a place of danger. (2) That he be discovered in such place, by the owner, agent or servant of the owner; and (3) a failure of the owner, agent or servant, after his discovery, to use ordinary care to avoid injuring such person.

The evidence in this case justified the instructions as given. The engineer testified that he did see the deceased walking between the tracks at the time he rounded the curve a quarter of a mile west of the station, and, on cross-examination, he said that he was 800 or 900 feet up the track when he saw somebody walking down the track, and that when he got close enough, until he thought he might be in danger, he blew the whistle. The fireman stated that the whistle was not blown at that point, but that it was blown at the station whistling post, a quarter of a mile back up the track, but that he did ring the bell. The evidence shows that by using the service brakes, the train could be stopped within 600 to 800 feet. The record is silent as to any check in the speed of the train, until after the accident, and it is admitted that the emergency brakes were not applied, and that by using them, the train could have been stopped in a lesser distance. It is further admitted that no attempt to stop the train was made until after the injury had been inflicted. No complaint is made that the instructions as given do not correctly state the law. We think that under the record in this case, it wou'd have been error not to give the instructions. As to whether the engineer and fireman used reasonable and proper care to avoid injuring the deceased, after they saw him approaching the track, or on the track or at the point where they, or either of them, thought that he was in danger, was a quesion of fact for the jury and they have passed on that question. Chicago, R. I. & P. Ry. Co. v. Martin, 42 Okla. 353, 141 P. 276; Missouri, K. & T. Ry. Co. v. Wolf, 76 Okla. 195, 184 P. 765; Lusk et al. v. Haley, 75 Okla. 206, 181 P. 727.

The third syllabus in Missouri, K. & T. R. Co. v. Wolf, is applicable in this case. The reasoning of the court in Lusk v. Haley, 75 Okla. 206, 181 P. 727, as given on page 209, Oklahoma Reports, is likewise applicable. We think that the deceased, in the instant case, was engaged in a perilous undertaking and was in a perilous position the moment that he started down the main track from that point 200 or 300 yards west of the station, under the circumstances disclosed by the records in this case, as it was train time; the train was a through train; the track was down grade. The accident took place at a point where the deceased and other persons were licensed to be, and at a place where the employees of the railroad company should have anticipated that people were likely to be, and especially children, and the deceased was in a position of peril from whatever time the evidence tends to show that the fireman and the engineer discovered him, or could have discovered him, either on or crossing the track, in front of the rapidly approaching train, and both the engineer and the fireman admit that he did get on the track a short distance in front of the train. One of them says he did not blow the whistle, but that he rang the bell, but the engineer admitted that he thought the deceased was in danger. From that moment the duty to use ordinary care began, and as to whether the proper things were done is not a question for us, but for the jury. Defendant's counsel contends that the deceased crossed the track to a place of safety. This was also a question for the jury, because of conflicting evidence and inferences. The instructions given by the trial court did not take away from the defendant the right to be exonerated, provided the jury should find that the contributory negligence of the deceased was the proximate cause of his injury and death. We think that the instructions were correct, under the law of this state, and that it was proper to give them.

The defendant next contends that the court erred in giving instructions Nos. 13 and 14, as follows, to wit:

13. "You are instructed that if you find by a preponderance of the evidence that on September 8, 1931, the defendant in the operation of its train and while approaching Mohawk station and crossing, carelessly and negligently failed to ring the bell or sound the whistle to warn the deceased or other persons who might be on said right of way, at said station and crossing, and that the carelessness and negligence on the part of the defendant to perform this duty was the direct and proximate cause of the death of Ira Hunter, deceased, then and in that event, it would be your duty to find for the plaintiff."

14. "You are instructed that under the law of this state, a bell of at least 30 pounds in weight or a steam whistle, shall be placed on each locomotive engine and shall be

rung or whistled at the distance of at least 80 rods from the place where the said railroad shall cross any other road or street, and for every neglect to ring the bell or blow the whistle the defendant railroad company shall be liable for all damages·which shall be sustained by any person by reason. of such negligence, and in that connection you are instructed that if you find and believe by a preponderance of the evidence that the defendant's train, as it approached Mohawk crossing and near where the train hit the deceased, had failed to ring the bell or sound the whistle, and that such failure and neglect was the direct and proximate cause of the death of the deceased, it would be your duty to find for the plaintiff."

With this contention, we do not agree. The record in this case discloses a public street crossing, known as Harvard crossing, one-half to three quarters of a mile west of the station, and another street crossing one-quarter of a mile east of the station referred to as Mohawk crossing, and that there was a whistle post, 80 rods west of the Harvard crossing, and that there was another whistle post, known as the station whistle post, located west of the Mohawk station about a quarter of a mile, and that Mohawk station is located west of the east street crossing a quarter of a mile, and that there is a whistle post for the east street crossing, located immediately east of the Mohawk depot, as shown by the exhibits of the defendant company, introduced during the testimony of the plaintiff. That the traveled public way, crossing said tracks to the schoolhouse, as used by the people in the vicinity in question, extends down the right of way and tracks from a point west of the station 200 or 300 yards, to a point 100 to 150 yards east of the station, and thence across the right of way to the schoolhouse, and that the station was a public station; that there was no way to get to and from the station except by using the right of way and tracks. Plaintiff's witnesses say that no whistle or bell was sounded, with reference to any of the above-mentioned places, on the date of the accident. The defendant's witnesses say that the whistle was blown, or the bell rung, at each of the places, except that no witness on either side testified that the whistle was blown or that the bell was rung at the whistle post immediately east of the station house and platform, and it must be remembered that the deceased was killed while at a point between the location of the last-mentioned whistle post and the east street crossing, referred to as Mohawk crossing, which was 80 rods, or a quarter of a mile, from the station house. The above-mentioned instructions

refer to Mohawk station and crossing, and tell the jury that if the defendant company failed to signal for such station and crossing, and that such failure was the proximate cause of the death of the deceased, then the plaintiff should recover. Under the particular facts and circumstances of this case, we think the giving of the above instructions was not reversible error. The premises about the station were open to the public. The footpath passage or traveled public way, as used by the children and adults in the community for church and school purposes, was public, and had been used by the public for a number of years; the defendant offers no evidence to contradict this proof. The deceased had used the said crossing for three school terms. Under this state of fact, the defendant company was duty bound to keep a lookout for the deceased and any other persons who might be at said public station or traveling said public passageway. In other words, the defendant company should have exercised that degree of care and watchfulness to protect the deceased from injury that was commensurate with the probability that he, or other persons, might be using said right of way and tracks at said points. Under this rule, the least that could be done was to sound the whistle or ring the bell. This was the minimum of care. Plaintiff's witnesses state that this was not done, while some of the defendant's witnesses say that the bell was rung. Others say the whistle was blown, but no one says that the speed of the train was ever checked until after the accident. It is true that in this case the accident did not happen at a public street crossing, but it did happen at a place used by the public, with the knowledge and consent of the defendant company. These facts justified the first instruction given, especially in view of section 1982, C. O. S. 1921, and section 2452, Okla. Stats. 1931. The defendant's agents, servants, and employees were, by statute, required to sound the whistle or ring the bell at least 80 rods west of the aforesaid east road or street crossing, which point would be at the Mohawk station. Section 5531, C. O. S. 1921; section 11961, Okla. Stats. 1931. All of the witnesses for the plaintiff and defendant placed Mohawk station a quarter of a mile west of the east street crossing. This court, in the case of St. Louis-San Francisco Ry. Co. v. Russell, 130 Okla. 237, 266 P. 763, stated that the statute above mentioned had application to a moving train, and that the signal for a street crossing may be given at a little greater distance than 80 rods of the crossing. Therefore, in this case, the statute should have been complied with when the train was

at or near Mohawk station, a whistle post being located immediately east of the station, and this duty should have been performed regardless of whether the deceased was a licensee or trespasser, and regardless of whether or not any person was at or near said crossing. The evidence in this case discloses that the deceased was at a place where he could have heard the whistle or bell, had the same been blown or rung, and could have left said tracks and avoided injury. It is true that the record in this case discloses that the engineer said that he blew the whistle when he was about 150 or 200 feet west of the station. If this was done, doubtless the same would have been in compliance with the above-mentioned statute. The fireman, however, said that the whistle was not blown at that point, but that it was blown west of there, and at the station whistle post. Other witnesses for the defendant stated that the whistle was sounded near the station, but all of the plaintiff's witnesses stated that no whistle was blown and no bell sounded. As to which group of witnesses were telling the truth is not a matter for us to determine. That was for the jury under proper instructions, as there was conflicting testimony, and, under the instructions given, the plaintiff could not recover ever, if the whistle and bell were not used, unless this was the proximate cause of the death of the deceased. The evidence with reference to the use of the whistle and bell, or the failure to use the same in compliance with the statutes, at and near the station, was competent evidence, both with reference to the negligence of the defendant company and the contributory negligence of the deceased, because of the unusual and peculiar fact situation in this case.

We have examined the cases as cited by counsel for defendant in their brief, and the same are not in point with the facts in the instant case. We think that under the state of facts in this case, a person traveling the pathway at the point where the deceased was killed would have a right to rely on the statutory warning being given for the east street crossing, and that the failure to signal at said crossing would, under the facts disclosed in this case, constitute a breach of duty toward the deceased, in his use of the traveled way or thoroughfare, which was in close proximity to the east street crossing. It also appears in this case, that the defendant pleaded the statutory provisions with reference to grade crossings, and that the defendant filed a motion to strike that portion of the pleading, and this

motion was denied. The general rule is announced in 52 Corpus Juris, at page 230, as follows:

"If a private crossing is so close to a public crossing that travelers on the former are accustomed to rely on the statutory warning being given for the latter, a failure to give the signals prescribed by statute for the public crossing is a breach of duty toward those on the private crossing,"

—citing numerous cases. Counsel, in their brief, have not cited any Oklahoma case in point with reference to this question, nor have we been able to find such a case from this court, but we think that, under the evidence and statutes referred to, there is no reason why the plaintiff was not entitled to the instruction as given, as it did not exact or require the defendant company to do more than perform the legal duty already prescribed by statute, and the benefit of the giving of this signal would undoubtedly have incidentally and naturally operated as a warning to the deceased. The deceased had a right to rely on the performance of this statutory duty, by the railroad company's employees, and the failure, if there was such failure, to give the statutory signal, should, in our opinion, under the facts in this case, be regarded as negligence on the part of the defendant toward the deceased. The question of the deceased's contributory negligence was covered in other instructions. The principle of law peculiarly applicable to the fact situation in this case is announced in the following cases: Louisville, etc., R. Co. v. Goetz's Adm'x (Ky.) 42 Am. Rep. 227; Cahill v. Cincinnati, etc., Ry. Co. (Ky.) 18 S. W. 2; Lonergren v. Ill. Cen. Ry. Co. (Iowa) 49 N. W. 852, rehearing in this case was allowed and the first decision adhered to (Iowa) 53 N. W. 236; Defrieze v. Ill. Cent. Ry. Co. (Iowa) 94 N. W. 505, and Ward v. Chicago, B. & Q. Ry. Co. (Iowa) 65 N. W. 999. We do not wish to be understood as saying that the principle of law as announced in the above cases is applicable to all persons traveling upon a railroad company's tracks, at or near a public crossing, but that, in the instant case, under the peculiar set of facts and circumstances, that said cases justify us in holding that the giving of the instruction complained of was not reversible error.

The next and last assignment of error is that the trial court erred in giving the instruction with reference to the measure of damages. We have carefully examined this instruction in connection with the evidence in this case on the question of damages, and find that the instruction complained of is

not a model, but that the same does not constitute reversible error in this case. The record discloses that the defendant excepted to this instruction, but nowhere do we find that counsel for the defendant submitted to or requested the trial court to give an instruction with reference to the measure of damages. Neither do we find in the record that counsel for the defendant at any time called the trial court's attention to the particular objections complained of with reference to the instruction given. The damages awarded do not appear to be excessive. The evidence, in our opinion, was sufficient to support a much larger verdict and judgment than that sued for and allowed. The defendant company did not offer any evidence contradicting that offered by the plaintiff with reference to the measure of damages. We think the following cases are decisive of this question: Midland Valley Ry. Co. v. Kersey, 59 Okla. 9, 157 P. 139; Dodson & Williams v. Parsons, 62 Okla. 298, 162 P. 1090; Rhodes v. Lamar et al., 145 Okla. 223, 292 P. 335, and City of Pawhuska v. Martin, 151 Okla. 24, 1 P. (2d) 638. In the last case, in the fourth syllabus, it is said:

"Where there is competent evidence establishing damages as alleged, and the verdict is not excessive, and when the complaining party does not request the trial court to give instructions correctly stating the measure of damages, the judgment will not be reversed because the court in its charge does not correctly define the measure of damages."

The judgment of the trial court is in all things affirmed.

The Supreme Court acknowledges the aid of Attorneys Clarence McElroy, T. H. Williams, and J. F. Hatcher in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. McElroy and approved by Mr. Williams and Mr. Hatcher, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.