## COKER et al. v. MOOSE et al.

No. 25747. Feb. 2, 1937.

Rehearing Denied April 27, 1937.

Application for Leave to File Second Petition for Rehearing Denied June 8, 1937.

Billingsley & Kennerly, Ledbetter & Shunatona, George F. Short, and Welcome D. Pierson, for plaintiffs in error.

R. N. Chase, Homer Bishop, and H. H. Edwards, for defendants in error.

CORN, J. This action was originally brought in the superior court of Seminole county by the plaintiffs to recover damages from the defendants for the death of Albert Moose, alleged to have been caused by the careless and reckless driving of a motor car upon a public highway by the defendant Frank Coker, a minor son of Jennie Lasley, who, it is alleged, permitted her said son to drive her car knowing him to be a careless, reckless, and incompetent driver, and knowing him to be addicted to the excessive use of intoxicating liquor. Plaintiffs asked damages in the sum of $75,000, but the jury returned a verdict in favor of plaintiffs in the sum of $34,250. From this verdict and the judgment of the court thereon, the defendants have brought this appeal. The parties will be referred to herein as plaintiffs and defendants, respectively, as they were designated in the trial court.

The defendant Frank Coker died after the filing of this appeal, and it appears that no revivor of the judgment against him has been had.

The defendants pleaded contributory negligence on the part of plaintiffs' decedent as a defense in the court below, and a proper instruction was given the jury upon that issue.

In determining the liability against the defendant Jennie Lasley, which was dependent upon proof that she gave her permission, express or implied, to her son Frank Coker to drive her car on the occasion of the fatal accident, this question was submitted to the jury for a special finding of fact in the form of an interrogatory as follows:

"Gentlemen of the Jury: Should you find for the plaintiffs and against the defendants or either of them, you are directed to answer the following question:

"Did Jennie Lasley give Frank Coker permission to use the Dodge automobile involved in the collision with the motorcycle ridden by Albert Moose at that time?"

This question was answered by the jury in the affirmative.

The evidence shows that the defendant Jennie Lasley knew that her son, Frank Coker, was a careless, reckless, and incompetent driver, and that she knew of a number of serious accidents he had had while driving her car, and that she paid the repair bills. It was common knowledge in the neighborhood that he was a dangerous driver, and different persons talked with her about it, but she persisted in permitting him to drive her car. On this particular occasion she was away from home when he took the car, but she left the keys to the car in his charge. The evidence shows that he purchased a flask of whisky and some beer on the fatal trip, and that at the time of the accident he was driving at the

rate of 75 to 80 miles per hour, and that the car was reeling from one side of the road to the other, and was on the wrong side of the road when the car collided with the motorcycle on which Albert Moose was riding. The whisky and the beer bottles were found, practically empty, in the car just after the wreck, and the defendant Frank Coker showed symptoms of intoxication. There was disinterested testimony to the effect that Albert Moose was traveling at a moderate rate of speed and was driving in a careful and safe manner.

The question of negligence is a question of fact, and where there is evidence reasonably tending to support the judgment of the court thereon, the same will not be disturbed on appeal. Oklahoma City v. Hayden, 169 Okla. 502, 37 P. (2d) 642.

The question of contributory negligence likewise is a question of fact for the jury, and when submitted by proper instruction, the foregoing rule applies with equal force.

The liability of an owner of an automobile, who knowingly permits a careless, reckless, or otherwise incompetent driver to operate his automobile, for damages resulting therefrom is recognized in this jurisdiction. In Waddle v. Stafford, 104 Okla. 192, 230 P. 855, where it was shown that Waddle permitted his daughter, an inexperienced and incompetent driver, to drive an automobile, which he had in his possession and control, upon the streets of a town, and attempting to park the car she drove over the curb and struck and injured Stafford. Stafford recovered judgment for damages on account of the injuries sustained, and the judgment was affirmed by this court on appeal. In affirming the judgment this court said in paragraph 2 of the syllabus:

"Where an individual who has possession and control of an automobile permits his daughter, who has little or no experience in driving automobiles, to drive it upon the streets of a town, and injury results because of inexperience of the driver of such automobile, the individual having possession and control of the automobile is properly held liable for the injury."

In the body of the opinion this court quotes with approval from cases from other jurisdictions as follows:

" 'While automobiles are not regarded as inherently dangerous instrumentalities, yet, if mother intrusted her automobile to her son, though not an agent or servant, who was so incompetent as to convert it into a dangerous instrumentality, causing death of plaintiff's intestate, she was liable, if incom- petency was known when she permitted the use.' Gardiner v. Soloman, 200 Ala. 115, 75 So. 621, L. R. A. 1917F, 380.

" 'The owner of an automobile, who permits his son to use the car with knowledge that the son is a reckless driver, is liable for damage caused by son driving the car, being negligent in permitting a reckless driver to use his automobile.' Rocca v. Steinmetz, 61 Cal. App. 102, 214 P. 257.

" 'It is the duty of a man to see that his automobile is not run by a careless, reckless person, but that it is in the hands of a skillful and competent person.' " Raub v. Donn, 254 Pa. 203, 98 A. 861.

It is contended that the court erred in the giving of instruction No. 12, which is as follows:

"You are further instructed, particularly in connection with instruction No. 7, that if you believe from a fair preponderance of the evidence that the defendant Jennie Lasley left her automobile under the direction of her son Frank Coker, or where Frank Coker could use her said car, then the jury may infer that the said Frank Coker had implied permission and authority to use the same."

Exactly the same issue was involved in the case of Crowell v. Duncan, 134 S. E. 576, a Virginia case, in which the court gave the following instruction:

"(3) The court instructs the jury that, if they believe from the evidence that J. W. Crowell left said automobile in the city garage under the direction of his son, Bruce Crowell, then the jury may infer that the said Bruce Crowell had implied permission and authority to use said automobile."

We do not hold that the mere accessibility of an automobile to an unauthorized driver authorizes an inference of permission to use it, as the phrase, "or where Frank Coker could use her said car," as used in the instruction, might be construed to mean, unless considered in the light of the facts and circumstances shown by the evidence under which the instruction was given. The evidence shows that Jennie Lasley kept two cars at her home for family use, with only herself and her son, Frank Coker, to use them; that said son carried the keys to the car involved in the collision and drove it whenever he desired. This clearly indicates that she provided the car for his unrestricted use, and under such state of facts no other reasonable inference could be drawn than the giving of permission and authority to use the car. We do not approve the above-quoted phrase in the instruction, but in view of the evidence in the

case and of the instruction as a whole, the language used was harmless and could not have prejudiced the rights of the defendant Jennie Lasley.

Where a parent who has a child known to be a careless or incompetent driver withholds or withdraws from the child permission to use his or her car, and uses reasonably diligence to prevent the use of it by such child, then such parent would not be liable for damages resulting from an unauthorized use of the car by such child.

The defendants' proposition 5 reads as follows:

"That the trial court erred in not declaring a mistrial of the cause when it became known to the jury that one of the defendants was protected with liability insurance."

This proposition assumes a fact not in evidence from the record, and is without merit, the same relating to a voluntary statement made by defendants' own witness. The witness on direct examination by counsel of defendants gave a detailed statement of what he knew about the wreck, and then came the following testimony:

"By Mr. Billingsley: Q. You gave that statement to Mr. Chase or someone? A. Yes, sir, to some man. Q. It wasn't any of these men here or those men there that you gave your statement? A. No, sir. Q. Had you ever talked to me until after that in your life? A. No, sir. That is all."

Cross-Examination.

"By Mr. Bishop: Q. Do you know Glenn Kivitt, who looks after Indian affairs in this county? A. No, sir. Q. Did you have occasion to talk to him about this case. A. No, sir. Q. But somebody came out there after that and got a written statement from you? A. Yes, sir. Q. How long after that collision did you make a written statement, what your testimony would be? A. I didn't mark down the date. Q. Well, in your best judgment, about how long after that collision was the statement made, in your best judgment, when did you give a written statement of what your testimony would be? By the Court: Q. How long after the wreck? A. I couldn't say for sure, not so long. Q. Give him an estimate? A. I judge between two and three months. By Mr. Bishop: Q. Where did you give that written statement? A. He came to my house and we went down and looked at the place where the collision took place. Q. Well, do you remember the man's name? A. No, sir. Q. Did you know where he was from? A. No, sir, he claimed to be representing the Insurance Company. By Mr. Billingsley: Objected to as incompetent, irrelevant and immaterial. By the Court: Sustained. It is a voluntary statement."

There is no evidence at all that the jury ever knew that either of the defendants was protected by insurance. The statement of the witness imparted no such information. If the jury received the impression that some one was protected by insurance, they could more logically have concluded that the insurance agent was working on claims in connection with policies on the victims of the tragedy. But suppose the suggestion of insurance had been of such nature as to have been prejudicial, who injected it into the trial of the case? There is nothing here to indicate that counsel for plaintiffs knew that an insurance agent had been out there and received a statement from anyone until counsel for defendants had his own witness to testify that some kind of a statement had been given to an unidentified person. Counsel for plaintiff undertook to explore the mystery on cross-examination, and blindly stepped into the pitfall. Had this been prejudicial, the defendants could not be heard to complain. To rule otherwise would place an insurmountable obstacle in the way of recovery on indemnity policies.

In the case of Letcher v. Skiver, 99 Okla. 269, 226 P. 1029, the plaintiff made a voluntary statement, not in response to the question propounded by counsel, injecting the suggestion that the defendant was protected by indemnity insurance. The defendant interposed an objection to the testimony and moved the court to withdraw it from the record and dismiss the jury and declare a "no trial." The court struck the answer and instructed the jury not to consider any portion of the conversation with reference to the insurance, as incompetent, but refused to dismiss the jury. The defendant saved his exception and made this an assignment of error on appeal. This court held, as stated in paragraph 1 of the syllabus, as follows:

"Where, in response to a proper question, a portion of the witness' answer is incompetent and irrelevant, and such incompetent and irrelevant testimony is stricken by the court and the jury instructed to disregard the same, and it is not apparent from an examination of the whole record that the complaining party was prejudiced by such answer, no reversible error has been committed by the court's refusal to dismiss the jury and declare a mistrial."

The defendants also contend that the verdict of the jury is excessive and is the result of passion and prejudice. We find no substantial basis for the contention that the verdict was the result of passion and prejudice, but we are of the opinion that it

is excessive. The widow of the deceased testified that he earned from $6 to $8 per day when he worked in the oil field, but it appears from the evidence that he did not have regular employment at such work, or at any other kind of work; but did carpentry when such work was available. We do not think his average earning capacity would justify a recovery of more than $15,-000.

The judgment is, therefore, affirmed on condition that the plaintiff file within ten days a remittitur of the judgment in excess of $15,000. Otherwise the judgment of the trial court will be reversed and remanded for a new trial.

RILEY, BUSBY, PHELPS, and HURST, JJ., concur. OSBORN, C. J., BAYLESS, V. C. J., and WELCH and GIBSON, JJ., dissent.