MISSOURI PACIFIC RY. Co. et al. v. GORDON, Adm'x.

*98 P. 2d 39.*

No. 28887.   Sept. 19, 1939.

Rehearing Denied Jan. 16, 1940.

Application for Leave to File Second Petition for Rehearing Denied Jan. 30, 1940.

Thomas B. Pryor and W. L. Curtis, for plaintiffs in error.

Bailey E. Bell, for defendant in error.

CORN, J. Plaintiffs in error, defendants below, appeal from a verdict and judgment rendered by the district court of Wagoner county, in an action brought by defendant in error, plaintiff below, to recover damages for the alleged wrongful death of her husband, Oscar Gordon, alleged to have been caused by the negligence of defendants' agents, servants, and employees. Hereafter we shall refer to the parties as they appeared in the trial court.

Plaintiff alleged substantially that defendants operated a railroad from northwest to southeast through the town of Wagoner; for 30 years the general public had used the right of way as a thoroughfare, with defendants' knowledge and acquiescence; between 1 and 2 a. m., May 9, 1937, defendants' train stopped for coal and water in Wagoner, the lights on said train making objects on the track in a southeasterly direction visible for a distance of more than a mile; deceased was on said track in a helpless condition, in a perilous position about 150 yards from the train.

Further, defendants' employees saw, or should have seen by the exercise of ordinary care, that deceased was on the

track in a perilous position; that regardless of this, defendants' employees started said train in a southeasterly direction approaching deceased, and increased the speed of the train until it ran over and fatally injured deceased; that even after the train had started it could have been stopped, but after defendants' employees had seen deceased on the track in a position of peril they started the train and ran it a distance of 150 yards, over the body of deceased, injuring and killing him.

Plaintiff further alleged defendants owed deceased, and to her, the duty to keep a sharp lookout to observe persons on its track, and the failure to do this constituted gross negligence; that defendants owed a duty to operate the train at such a rate of speed that it could be quickly stopped to avoid injuring one who was in a perilous position, but that they utterly disregarded such duty, and ruthlessly, wantonly, and in utter disregard of the rights of deceased, and the duty owed to him, ran the train over deceased, fatally injuring him. As damages for conscious pain and suffering and wrongful death, plaintiff asked $3,000.

At the close of the evidence defendants' separate demurrers and motion for directed verdict were overruled. After receiving instructions from the court, the jury returned a verdict for plaintiff for $800, and defendants have appealed from this judgment. Numerous assignments of error are offered. However, for the purposes of this appeal, we deem it necessary to consider only one question. This is the question whether, under all the facts shown by the record, the defendants failed to perform any duty owed to protect deceased from injury or death.

We are aware of and recognize the correctness of the rule as announced in the cases cited by plaintiff that a railroad is bound to exercise that degree of care and watchfulness to protect human life that is commensurate with the probability there may be persons upon the track at a given point, and whether this has been done is a question of fact for the jury to determine under proper instructions. Atchison, T. & S. F. Ry. Co. v. Hunter, 173 Okla. 415, 49 P. 2d 86. We are also familiar with the rule that negligence may be shown by circumstantial evidence and the inferences reasonably deducible therefrom, and where these facts and inferences are such that reasonable men might differ, negligence is a question for the jury. City of Enid v. Smith, 167 Okla. 381, 29 P. 2d 765; Coker v. Moose, 180 Okla. 234, 68 P. 2d 504; Dixon v. Gaso Pump & Burner Mfg. Co., 183 Okla. 249, 80 P. 2d 678.

However, we are of the opinion certain matters preclude the acceptance of the stated rules as being decisive of the case at bar. Numerous decisions from this court have laid down the rule that the mere fact an injury has occurred carries with it no presumption of negligence, but rather is an affirmative fact for the injured party to establish, in order to show the defendant has been guilty of negligence. St. Louis & S. F. Ry. Co. v. Fick, 47 Okla. 530, 149 P. 1126; Chicago, R. I. & P. Ry. Co. v. Tate, 57 Okla. 215, 156 P. 1182; Atchison, T. & S. F. Ry. Co. v. Phillips, 158 Okla. 141, 12 P. 2d 908; Chicago, R. I. & P. Ry. Co. v. Smith, Adm'x, 160 Okla. 287, 16 P. 2d 226; Lowden et al. v. Van Meter, 181 Okla. 210, 73 P. 2d 424.

Neither is a railroad company to be held liable for injuries alleged to have been caused by negligence of its employees where there is no positive evidence of negligence or facts from which negligence can be reasonably inferred. Chicago, R. I. & P. Ry. Co. v. Pedigo, 102 Okla. 72, 226 P. 72; Kurn et al. v. Cochran et al., 181 Okla. 205, 73 P. 2d 433.

These rules, then, must be applied to the facts revealed by the record in the case at bar, under the rule so often announced by this court, that to constitute actionable negligence, where the wrong is not willful and intentional, there must be: (1) A duty on defendant's part to protect the plaintiff: (2) a failure on part of defendant to perform this duty; (3) an injury result-

ing to the plaintiff by reason of such a failure. St. Louis & S. F. Ry. Co. v. Lee, 37 Okla. 545, 132 P. 1072, 46 L. R. A. (N. S.) 357; Harrington v. Central States Fire Ins. Co. of Wichita, Kan., 169 Okla. 255, 36 P. 2d 738, 96 A. L. R. 859.

Thus, it becomes necessary for us to consider the record in determining whether the defendant failed to perform any duty it owed to the deceased in the instant case.

For the plaintiff the only evidence directly relating to the occurrence of the tragedy was, in substance, as follows: One witness, Bessie Hammock, testified she lived about 300 feet from the south end of the coal chute where the train refueled. She was in bed between 1 and 2 a. m., the morning Oscar Gordon was killed. When the train started to pull out the lights shining in her window awakened her. The train started whistling, "like there was something on the track," and she thought a car might be stalled on the crossing. The train whistled until it got down to the crossing and stopped, and when it stopped it "kind of jarred like the brakes had been applied quick, she guesses." She told her husband she believed the train had hit a car. She heard the train whistle from the time it started until it stopped, ten or fifteen times.

Ida Seals, a witness for plaintiff, testified substantially as follows: She observed the train the night Oscar Gordon was killed, and was watching the train when it moved away from the coal chute. Then she testified:

"Well, when the train started moving from the coal chute I were watching it and I watched it until it gradually moved away and it commenced blowing and I knew it was a death signal when I heard it and I watched it until it made its last death signal and when it made the signal of death and I knew I said to my husband, 'Wake up, something has got killed,' and he woke up and the engine backed up almost to the coal chute. I was watching it."

Thereafter this witness testified the train gave five or six short blasts of the whistle and then one long blast.

The foregoing is the substance of the evidence offered by the plaintiff in regard to the actual occurrence of the tragedy, other than testimony as to the speed the train was traveling, about as fast as a person would ordinarily walk, and testimony the night of the accident was a clear night.

Opposed to this evidence was the testimony of defendants' witness, W. J. Lankford, the engineer in charge of the locomotive, and the only witness who was able to give any direct testimony as to the conditions and events leading up to the tragedy. His testimony, in substance, was as follows: He left the coal chute, working the engine hard to get up speed. There was some fog between the coal chute and the place where this man was struck. When he got through the fog he could see an object upon the track about 350 feet from him and first thought it might be some paper, as paper very often blows onto the track. Something like that struck him. Then he thought it might be a big dog on account of the position it was in, but as he got closer it looked as though it might be a man. He had blown his whistle for the crossing and he began to blow the whistle hard to attract the attention of the object, thinking it would move from the track, but it did not move and he applied the brakes and kept whistling, but could not tell it was a man. When he got very close he thought that was what it was. It looked as though he was sitting flat in the middle of the track with his head hanging down between his knees, but didn't move until he was out of sight, which would be 25 or 30 feet ahead of the engine. He blew the whistle for the crossing from habit, and when he saw the object he began to blow the whistle again, thinking he could attract whatever it was. He thought the object might be a dog and he would frighten it off, but it did not move and he began to wonder what it was. He had such a short time to make up his mind and when it appeared

to him to be a man sitting there, he applied the emergency and stopped as quick as he could, but did not know whether the object had jumped off the track or not after it got out of view. He stopped the train and told the fireman he believed they had run over someone. After he reached the conclusion the object was not paper on the track, he tried to stop the train before he came to this object.

Thereafter, this witness testified the speed was 30, 35, or 40 miles per hour, which constituted his testimony in chief, other than testimony as to general physical conditions and the finding of deceased's body under the train.

Cross-examination of this witness elicited the following testimony. He saw the object when about 350 feet away and ran about 150 feet before he could decide it might be something besides paper. He never knew it was a man until he got down and found deceased, but it looked like a man as he got close to him. He made every effort to keep from running over the object. He thought it was a dog and was going to stop even if it had been a dog. Before he decided it was a man he was 200 feet from the object and when it looked like a man he applied all of the emergency brakes. He could have stopped when 350 feet away if he had known it was a person when he first saw the object.

This extended resume of the testimony is the evidence from which we are called upon to determine whether the defendant violated any duty owed to deceased such as would constitute actionable negligence.

The question here presented is one which has been passed upon by the courts of our own and other jurisdictions innumerable times. Our problem is to determine whether defendants' employees used that degree of care commensurate with the probability that persons might be upon the track at that point.

The case of Vorhees et al., Adm'r of Otto Vorhees, v. Chicago, R. I. & P. Ry. Co. (Mo. 1930) 30 S. W. 2d 22, 70 A. L. R. 1106, involved facts very similar to the case at bar. In that case the engineer had noticed a crew of workmen working in a certain vicinity. Deceased had been posted on the track as a flagman, to warn approaching trains, and he was run over and killed by the train he had been stationed to warn. The evidence showed deceased lay down upon the track and was run over and killed, although the day was clear and visibility uninterrupted for some distance.

In reversing the judgment of the trial court for the plaintiff, the Supreme Court of Missouri said:

"Upon the issue of the sufficiency of the evidence, the sole question is: Could the jury, from the proof in the record tending to show that one in the position of defendant's engineer could and should have discovered that the object on the track was a human being, properly find that the engineer of defendant's train actually knew that said object was a human being in a perilous position in time to have stopped the train under the conditions existing at the time with the appliances at hand and without injury to his train or its passengers and thereby have avoided striking and killing the deceased? * * *"

In the body of the opinion the Missouri court cited and discussed numerous cases, among which was the Kentucky case of Louisville & N. R. Co. v. Ison, Adm'r, 216 Ky. 708, 288 S. W. 668. In that case the engineer saw an object upon the track, but did not identify it as a human being until he had run over and killed deceased. In reversing a judgment of the trial court allowing recovery, the Kentucky court used the following language:

"The rule is firmly established in this jurisdiction that, where trainmen discover an object upon or dangerously near the track and cannot tell what it is, and there is nothing in the surroundings to impose the duty upon them to know what it is, the defendant does not have to check the speed of the train,

and proceed upon the assumption that the object may be a human being."

In the Vorhees Case, supra, attention was also directed to Tucker's Adm'r v. Railroad, 92 Va. 549, 24 S. E. 229, in which case the facts were similar to the case now before this court. In deciding the question the Virginia court said:

"The fact that the engineer saw what he supposed to be an inanimate object lying in the ditch at the side of the track was not sufficient to impose upon him the duty of taking steps to stop his train. No such degree of caution is required, under the rule to which we have adverted. Railroad companies would fall far short of meeting the demands of the public, if they had to stop whenever they saw an object lying on the side of the roadbed, for fear it might be a trespasser in danger. When they have sufficient notice, or sufficient ground to believe, that a trespasser is in danger, they owe him the duty of protection, as far as possible consistent with their higher duty to passengers. But, when no one is known or believed to be in danger, they are under no obligation to prepare for what is not anticipated, or to stop and examine where no harm is suggested by the circumstances."

In 70 A. L. R. 1116, there is presented an exhaustive annotation upon the question of liability for negligence resulting from the failure of a train employee to discover, in time to avert an accident, that an object seen on or near a railroad track is a human being. Reference to this annotation reveals the courts of fifteen sister states adhere to the rule that mere discovery of an object upon the track, not discernible to be a human being, does not impose upon the employees in charge of the train the duty to stop or lessen the speed of the train, unless the circumstances be such as to lead a reasonably prudent man to believe that the object was probably a human being.

Being convinced, both of the propriety of the rule and the soundness of the reasoning upon which it is based, we declare herewith our approval of the rule.

The plaintiff cites and relies upon cases from this jurisdiction based upon the doctrine of last clear chance, and has directed particular attention to the case of Atchison, T. &. S. F. Ry. Co. v. Hunter, 173 Okla. 415, 49 P. 2d 86, holding whether the engineer and fireman on a train used reasonable care to avoid injuring deceased was a question of fact for the jury. Also cited are the cases of Sand Springs Ry. Co. v. McWilliams, 170 Okla. 85, 38 P. 2d 539, and related cases, all holding the rule of last clear chance applied where the one having the last chance to avoid an injury fails to use reasonable care to avoid the injury, and the failure is the proximate cause of the injury. With the soundness of these cases and the rules therein announced, we have no disagreement. However, we do not believe the plaintiff can here invoke the doctrine of last clear chance, because, in the words of Justice Cardozo in Woloszynowski v. N. Y. Cent. R. Co. (N. Y.) 172 N. E. 471, 472:

"The doctrine of last clear chance, however, is *never* wakened into action unless and until there is brought home to the defendant to be charged with liability a knowledge that another is in a state of present peril."

In this connection we also direct attention to Pennsylvania R. Co. v. Swartzel, 17 F. 2d 869, to the effect that the last clear chance doctrine does not apply unless the peril is actually discovered, *the theory of the doctrine being based upon and confined to conduct subsequent to discovery of the danger.*

From the facts revealed by the record, we must conclude the deceased's perilous position was not discovered in time for the tragedy to have been prevented. No other conclusion is possible, since neither the evidence nor the inferences to be drawn therefrom make it appear the engineer failed to do everything possible to avoid running over deceased after he concluded there was a probability the object upon the track might be a human being. Under the evidence no other conclusion is possible, and it is obvious the doctrine of last clear chance can have no application here.

The evidence entirely fails to show negligence on the part of defendants' employees. Neither are we able to say the circumstances were such that negligence can be inferred. While negligence may be shown by circumstantial evidence and the inferences reasonably deducible therefrom, such inferences must be based upon more than mere speculation. Atchison, T. & S. F. Ry. Co. v. Phillips, 158 Okla. 141, 12 P. 2d 908; Okmulgee Gas Co. v. Kelly, 105 Okla. 252, 232 P. 432.

It was not necessary for plaintiff's evidence to rise to that degree of certainty which would exclude every other conclusion. But it was necessary for this evidence to be of sufficient force to make it more probable there was negligence on the part of defendants' employees in failing to exercise such care as the circumstances required to avoid injuring deceased. The evidence was not sufficient, either to do this or to establish by permissible inference, from other circumstances, that the engineer did not exercise the degree of care required by the circumstances to determine the object on the track might be a person and avoid injuring him. See City of Tulsa v. Harman, 148 Okla. 117, 299 P. 462.

The tragic circumstances resulting from this unfortunate happening are apparent. However, we are unable to establish rules of law to fit such circumstances when they would, of necessity, have to be based upon conjecture, or assumption based upon unfounded inferences.

Thorough consideration of the record, and application of the rules of law heretofore announced, necessitate our concluding that the trial court erred in overruling defendants' demurrers and motion for directed verdict.

The judgment of the trial court is accordingly reversed and remanded, with directions for the trial court to vacate the judgment rendered and dismiss the action.

BAYLESS, C. J., WELCH, V. C. J., and GIBSON and DANNER, JJ., concur. OSBORN, HURST, and DAVISON, JJ., dissent. RILEY, J., absent.