ATCHISON, T. & S. F. RY. CO. v. HOWARD, Adm'r.

*98 P. 2d 914.*

No. 28889.   Sept. 19, 1939.

Rehearing Denied Feb. 6, 1940.

Rainey, Flynn, Green & Anderson,

Hugh F. Owens, and McCollum & McCollum, for plaintiff in error.

Bailey E. Bell and Emerson R. Phillips, for defendants in error.

CORN, J. The plaintiff recovered a verdict and judgment against the defendant railway company in the sum of $2,000, for the alleged wrongful death of plaintiff's decedent, Robert Wright, and the defendant, to reverse said judgment, brings this appeal. The parties are referred to herein as they appeared in the trial court.

The only question involved in this case is whether the plaintiff has shown that the defendant, under the circumstances, was guilty of actionable negligence.

It is alleged in the petition that the deceased, Robert Wright, had lived in the vicinity of Ralston with his father and mother for many years, and that he and many other persons had for a number of years walked up and down the railroad track from the town of Fairfax to Ralston, a distance of five or six miles, and had used the railroad bridge for the purpose of crossing the Arkansas river between the two towns, and that for many years there had been a beaten and much used path and trail leading from one of said towns to the other, in and upon said railroad tracks, and that for many years the public generally had used the same very extensively, with the knowledge and consent of the defendant; that on or about the 11th day of July, 1937, the deceased, Robert Wright, was in the town of Fairfax and started walking down the track to the town of Ralston, where he resided at the time; that it was early in the morning, and that the said deceased walked from the town of Fairfax on the tracks of the defendant company until he had crossed the bridge over the Arkansas river and was only a little more than a mile north of the town of Ralston when he was fatally injured; that there was a strong wind from the south, and that the deceased, Robert Wright, had crossed the bridge and was walking in a southerly direction in the middle of the railroad tracks, facing said wind; that the defendant, its agents, servants, and employees were operating a train in a careless and reckless manner and in violation of the laws of the state of Oklahoma, and that said train was coasting along with the motor cut off and making little or no noise, and that the defendant, its agents, servants, and employees negligently failed to ring the bell or sound the whistle for the grade crossing ahead, and failed and neglected to ring the bell and sound the whistle at the whistling post approximately 250 yards north of where the deceased was injured; and that the defendant, its agents, servants, and employees negligently failed to keep a lookout for persons who might be on the tracks, and that said train slipped along quickly at a dangerous rate of speed, giving no alarm whatsoever; that the deceased continued to walk in a southerly direction, and that the defendant, its agents, servants, and employees were negligent and careless in not keeping a proper lookout and observing said deceased in a position of peril, and in not stopping said train when they did see the deceased on said tracks, or should have seen him there if they had been keeping a proper lookout; that after they saw him in this position of peril, or should have seen him by the exercise of proper care, they operated the train at the same rate of speed, and failed and neglected to ring the bell, blow the whistle, or give any other warning until they ran over him, crushing and mangling his body, head, and limbs until he died as a result of said injury; that the defendant, its agents, servants, and employees all knew, or should have known by the exercise of ordinary care, that said railway right of way and tracks were at the time, and had been for many years in the past, used excessively by pedestrians, and that they owed the deceased the additional duty of keeping a sharp lookout by reason of such knowledge.

The defendant in its answer alleges that the said Robert Wright, on said date, broke, wandered, and entered onto the right of way of the railway company near the ·town of Ralston without the

knowledge, authority, or consent of the employees of this defendant; that he was a man of mature years, in possession of his faculties of perception, and that while upon the right of way of this defendant without the knowledge or consent of the employees of the defendant, the said Robert Wright was a trespasser to whom the defendant owed no duty other than that of not wantonly injuring him after discovering him in a position of peril; that the said Robert Wright, being a trespasser upon the right of way of defendant, had placed himself in a position of peril in that he was lying prostrate upon the tracks of the railway company, and as a result thereof the operator of the train was unable to discover his position of peril in sufficient time to stop and thus avoid the accident; and that the deceased on account thereof was guilty of contributory negligence which was the direct and proximate cause of decedent's death.

The defendant contends: (1) That the plaintiff failed to establish at the trial the allegations of negligence contained in his petition; (2) that there is no evidence of violation of a legal duty owing to the plaintiff by the defendant; and (3) that the doctrine of the last clear chance does not apply under the facts in this case.

The foregoing contentions necessarily require an examination of the record to determine the sufficiency of the evidence to sustain the verdict and judgment appealed from. In passing upon the sufficiency of the evidence we are guided by the long established rule set out in the case of Atchison, T. & S. F. Ry. Co. v. Hunter, 173 Okla. 415, 49 P. 2d 86, in language as follows:

"It has long been a settled rule of this court that if there is competent evidence reasonably tending to support the verdict, the same will not be disturbed on appeal, and where there is conflicting evidence, this court will not examine the same for the purpose of determining the weight thereof; but when a demurrer is filed and an instructed verdict is requested, this court will examine the record, and if upon such examination, it is found there is no evidence reasonably tending to support the verdict and judgment, such judgment will be reversed. Gulf, C. & S. F. Ry. Co. v. Harpole, 111 Okla. 301, 239 P. 609. And if the evidence reasonably tends to support the verdict, it will not be set aside. Collins Cotton Co. et al. v. Wooten-Burton Sales Co., 81 Okla. 67, 196 P. 681, and St. Louis-San Francisco Ry. Co. v. Rundell, 108 Okla. 132, 235 P. 491."

In the case of Atchison, T. & S. F. Ry. Co. v. Phillips, 158 Okla. 141, 12 P. 2d 908, the rule as to what constitutes actionable negligence is stated as follows:

"To constitute actionable negligence, where the wrong is not willful and intentional, three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure."

To establish the first element of actionable negligence on the part of the defendant, the plaintiff alleged and endeavored to show by the evidence that the railroad tracks where the deceased was alleged to have been killed were used by the public generally as a footpath between the two towns with the knowledge and consent of the defendant, and that by reason thereof the deceased was a licensee and that the defendant owed him the duty of protecting him from injury. The evidence falls far short of establishing this as a fact. There is some testimony in the record to the effect that a few individuals residing north of the river, including the deceased, had in the past crossed the river on the railroad bridge and had walked along the right of way and tracks in going to and returning from Ralston to their homes, but the evidence shows that this travel was only occasional and in isolated cases, and not frequent, general, or excessive, such as would imply a license to the public to use the right of way as a thoroughfare for travel. The plaintiff introduced in evidence some photographs showing in fine detail the right of way and railroad tracks at this particular place, and these photographs

speak with unerring certainty in regard to the alleged beaten path. Not the slightest trace of a path is shown in the picture. On the contrary, it shows that the right of way is fenced on both sides and one of them shows the stock guard at the road crossing. This evidence not only disproves the allegation that the right of way was permitted to be used as a public thoroughfare, but proves to the contrary that the railway company had used all reasonable and proper means to prevent it from being so used. Without doubt the deceased was a trespasser upon the property of the defendant at the time he was run over by the train and killed.

The other material allegations of the plaintiff's petition alleging primary negligence on the part of the defendant likewise are not supported by the evidence. There is no evidence that there was a strong wind blowing from the south, nor that the deceased was walking down the tracks when struck by the train. Neither is there any evidence that the train was operated at a reckless rate of speed, nor that the engineer failed to keep a proper lookout for persons upon the tracks, nor that the engineer failed to blow the whistle at the whistling post. The plaintiff relies upon negative testimony to prove the allegations of his petition. A witness living up the railroad from where the accident occurred testified that he saw a man walking down the tracks early that morning, but plaintiff produced no evidence that the deceased was walking or standing on the tracks when struck by the train. The existence of such fact was left entirely to conjecture in so far as plaintiff's evidence goes.

The plaintiff's evidence does show, however, that the said Robert Wright was at Fairfax the night before the accident attending a carnival and was up all night without sleep and that he and companions drank beer, and a girl companion testified that the party of which he was a member drank a pint of alcohol straight, and that while they were together the deceased drank two or three bottles of 3.2 beer. This evidence, although circumstantial, gives rise to a strong inference that the deceased was intoxicated or asleep and lying down between the rails, as testified to by the engineer, when the train ran over him.

On behalf of the defendant the engineer testified that his train was about 15 or 20 minutes late out of Fairfax; that as he arrived at the Arkansas river bridge he shut off his motor and held it down to ten miles an hour in obedience to a slow order; that the momentum of the train took it almost around the south end of the bridge; that as soon as he got off the bridge he advanced the throttle and the train then started to pick up speed; that the track describes a big curve after you come off the bridge; that after he had traveled around the curve on the straight track he perceived, as he frequently does, an object on the track farther ahead; that it looked like a paper sack of some sort on the track; that the track was clear of everything except that object, which was lying upon some new ballast that had been distributed there a few days before; that he had attained a speed of about 30 miles an hour and when he came within 75 to 100 feet of the object where he could see it, it looked like either a human being or a hog, and he applied his brakes in full emergency; that the object appeared to be piled up in a knot there and it looked as if the feet might have been to the north; that his brakes went into operation immediately on the second; that he traveled about 275 or 300 feet before the train came to a stop; that he got off his motor and looked around and underneath the pilot; that he then had a conversation for a minute or two with the conductor and then backed up about 200 or 250 feet; that his examination of the cowcatcher was made before the backup movement; that it was perfectly clean and no blood, pieces of flesh, or clothing were on it whatsoever; that he, together with the brakeman and conductor, went back to the body, which was then lying with the feet south and head north; that they picked up the body and laid it off on the east side of the track and then proceeded on into Ralston; that after he had reached the point where the object

on the track looked like a human being or something alive, there were no other means at his command which he could have employed to stop the train; that everything was done that could have been done to prevent the accident. The brake expert of the company testified that the brakes worked effectively and stopped the train as quickly as possible at the rate of speed it was going.

The rule in regard to the duty owed by a railway company to trespassers in general is stated in the case of Lusk et al., Receivers of St. Louis & S. F. Ry. Co., v. Haley, 75 Okla. 206, 181 P. 727, as follows:

" 'A railroad company in the operation of its trains, while it does not owe an unauthorized person upon its tracks the duty to use ordinary care in discovering such person on its tracks or to discover his dangerous position, must, after the discovery of his peril, use ordinary care to avoid doing him injury.' A., T. & S. F. R. Co. v. Miles, 69 Okla. 138, 170 P. 896; A., T. & S. F. R. Co. v. Clark, 42 Okla. 638, 142 P. 396."

The case of Atchison, T. & S. F. Ry. Co. v. Phillips, supra, discusses and disposes of every question involved in this appeal. In that case a child was killed on the tracks within the city limits where the right of way was not fenced, and near the place where a beaten path crossed the railroad, but the child was not upon the path when struck by the train, but was sitting on the side of a bridge when it heard the train coming and jumped up and ran down the track in front of the train, and the engineer did not see it in time to stop and avoid the accident. In that case this court held that the child was a trespasser, and laid down the rule applicable to the situation as follows, 9th paragraph of the syllabus:

"If a pedestrian sits on a railroad track, he becomes a trespasser to whom the railroad company owes no duty other than not to wantonly or willfully injure him."

Also that, 8th paragraph of the syllabus:

"In an action involving a question of negligence, the existence of a well-worn path running diagonally across the railroad track is immaterial, where it is shown that the injury resulted from the injured person being upon the track at a place other than that at which the path crossed the track."

And, in discussing the proof necessary to support a judgment under the facts in that case, the court said:

"In this state the mere fact that an injury occurs carries with it no presumption of negligence. Chicago, R. I. & P. Ry. Co. v. Tate, 57 Okla. 215, 156 P. 1182. The burden is upon the plaintiff, in an action to recover damages for an injury caused by alleged negligence, to show the existence of the negligence and that the negligence was the proximate cause of the injury. Star v. Brumley, 129 Okla. 134, 263 P. 1086. A railroad company will not be held liable for personal injuries alleged to have been caused by the negligent acts of its employees, where there is no positive evidence of negligence or of facts from which negligence can be reasonably inferred. Chicago, R. I. & P. Ry. Co. v. Pedigo, 102 Okla. 72, 226 P. 72. Neither conjecture nor speculation may form a basis for a judgment. Eastern Torpedo of Ohio Co. v. Shelts et al., 121 Okla. 129, 247 P. 974.

There is no obligation or duty resting upon the railroad company, its agents, servants, and employees to keep a lookout for trespassers on its property, nor to assume or anticipate that a trespasser, for his own pleasure or convenience, will assume a position of peril thereon; and to establish liability under the doctrine of the last clear chance, it is necessary to prove: (1) That the trespasser was in a place of danger; (2) that he was seen in such place of danger by the owner or agent or servant of the owner; and (3) a failure thereafter to use ordinary care to avert the injury. Gypsy Oil Co. v. Ginn, 152 Okla. 30, 3 P. 2d 714; Oklahoma Ry. Co. v. Overton, 158 Okla. 96, 12 P. 2d 537; Atchison, T. & S. F. Ry. Co. v. Phillips, supra.

It is contended by the defendant that under the evidence in this case the doctrine of the last clear chance does not apply for the reason that the peril of the

deceased was not discovered in time to stop the train and avert the injury.

This court heretofore has held that the last clear chance rule does not apply where the defendant does not discover the injured person's exposure to danger in time to prevent the accident. Buss v. Chicago, R. I. & P. R. Co., 77 Okla. 80, 186 P. 729; Chuck v. Davis, 110 Okla. 196, 237 P. 95.

In view of the testimony of the engineer that when he came within 75 to 100 feet of the object, where he could see it, it looked either like a human being or a hog, and he applied his brakes in full emergency, and that his brakes went into operation immediately on the second, and in view of the testimony of the brake expert that it would take from 425 to 450 feet to stop the train running at 30 miles an hour, it is apparent that it was impossible to stop the train in time to avert the accident after coming close enough to determine that the object which the engineer saw was a human being; and that being the case, the rule would not apply. It is equally clear that the engineer, after the discovery of his peril, not only used ordinary care to avoid injuring him, but used every means at his command to do so.

Adverting to the question of the sufficiency of the evidence to prove actionable negligence, the rule applicable to this case is succinctly stated in the syllabus of Kurn et al. v. Cochran, 181 Okla. 205, 73 P. 2d 433, as follows:

"A railroad company will not be liable for an accidental death alleged to have been caused by the negligence of its employees in the operation of one of its trains where there is a total lack of positive evidence of negligence, or of facts and circumstances from which such negligence can be inferred.

"A demurrer to the plaintiff's evidence in such an action should be sustained unless it is reasonably apparent from the evidence that the death was caused by some wrongful act of the defendant's agent or servants in violation of a legal duty owing to the decedent; and the mere fact that the deceased was killed carries with it no presumption of negligence.

"Where, in an action involving such a question of negligence, there is a failure to make out a case of primary negligence or to prove a causal relation between such negligence and the alleged wrongful death, and the jury returns a verdict for the defendants, it is error for the trial court to sustain a motion for new trial."

From an examination of the record we are convinced that the facts in this case bring it within the rules announced in the foregoing authorities. There is a total lack of positive evidence that the death of the plaintiff's decedent was caused by any wrongful act of the defendant's agents or servants in violation of any legal duty owing to the decedent. In other words, there is no evidence in the record that the defendant was guilty of actionable negligence.

Where the trial court should have directed the verdict for the defendant, but refused to do so, and it clearly appears that the plaintiff cannot better his case on another trial, this court will reverse the judgment and remand the cause, with directions to enter judgment for the defendant. 2 R.C.L. par. 240.

The judgment is therefore reversed and remanded, with directions to enter judgment for the defendant.

BAYLESS, C. J., and GIBSON, DAVISON, and DANNER, JJ., concur.