**MOORE et al. v. KURN et al.**
No. 1863.

Circuit Court of Appeals, Tenth Circuit.
Dec. 14, 1939.

Rehearing Denied Feb. 6, 1940.

HUXMAN, Circuit Judge, dissenting.

———◆———

Carlos Wadlington, of Ada, Okl. (R. Hal Welch and E. W. Kemp, both of Ada, Okl., on the brief), for appellant.

Ben Franklin, of Oklahoma City, Okl. (M. K. Cruce, Gray W. Satterfield, and Draper Grigsby, all of Oklahoma City, Okl., on the brief), for appellees.

Before LEWIS, BRATTON, and HUXMAN, Circuit Judges.

LEWIS, Circuit Judge.

Sarah A. Moore sued the trustees of the St. Louis-San Francisco Railway Company as mother and next friend of Elbert Moore and Ruth Helen Moore, minors for the death of their father, J. J. Moore. Sarah A. Moore was divorced from J. J. Moore. The mother had been awarded the custody of the girl and the father of the boy. The father was obliged to and did support them. Any objection to the sufficiency of the parties plaintiff was waived and is not raised on this appeal.

J. J. Moore was fatally injured June 29, 1937, at about 6:30 p. m. It was stipulated that deceased was totally deaf. The deceased dropped his hoe in a field where he had been working, followed a path down to the track, and walked south down the road bed. He was struck from the rear upon a curve a short distance from where he went onto the road bed by an engine drawing six cars and a caboose. Three or four gondola cars were loaded. The track had been undergoing repairs and the train was proceeding slowly, 15 or 20 miles per hour. Witnesses who were nearby testified that the engineer whistled repeatedly after he got within 1200 or 1400 feet of the deceased. Deceased apparently was unaware of the approaching train. There was a .6 of 1% grade down to the south. A former locomotive engineer estimated that a train such as that involved here could be stopped in 200 to 225 feet moving at 20 miles per hour. This evidence was not contradicted.

At the close of plaintiff's evidence when the court announced he would sustain a demurrer to plaintiff's evidence, plaintiff's counsel obtained permission to reopen the case. The engineer who was operating the train was put on the stand. He testified he was in the engineer's seat watching the track; that he first saw the deceased 900 feet away "walking down the track apparently on the outside of the track"; that he was to the left of the left hand rail; and that the beams of the engine extended to about the edge of the ties.

"Q. What did you do when you first saw him? A. I sounded the whistle for the curve and didn't think anything about it. We see them every day. I sounded the road crossing whistle for that curve.

"Q. At that point you were how far back from the curve? A. I couldn't say. It was just a second or two until I went around the curve to the right and I seen he was close to the track.

"Q. Now just a moment. When you got around into the opening of the curve to where you could see him you then saw he

was not in the clear of the train? A. Yes, sir.

"Q. What did you do then? A. When I seen he wasn't in the clear I set my brakes in emergency and sounded the stock alarm with the whistle.

"Q. Which did you do first? A. I set my brakes, just as soon as I seen he wasn't in the clear I set my brakes.

"Q. Did you set your brakes before you sounded the stock alarm? A. It was all done so quick I couldn't say. The first thing I thought of when I saw him was setting my brakes.

"Q. Up to that time he had never looked around had he? A. No, sir."

The engineer testified that he was familiar with the track and the width of the road bed on each side of the rails at that point.

"Q. How come you to put on your brakes? A. I didn't think the man heard the engine.

"Q. Did you think he was in danger when you first started putting your brakes on? Was it apparent to you that the man was in danger? A. Yes, sir.

"Q. I believe you said you couldn't say which you did first give those short whistles or set the brakes? A. Well, the first thing I guess was setting the brakes.

"Q. Then your testimony is at the point where you started setting your brakes you recognized the man was in danger? A. Yes, sir.

"Q. You gave those short sharp blasts also after you had discovered he was in danger? A. Yes, sir, about the same time I set the brakes.

"Q. Do you say at the time you began to give those short sharp blasts you recognized the man was in danger?

"The Court: He has said that three or four times.

"A. Yes, sir.

"Q. What can you do towards stopping a train besides setting the brakes? A. The only thing is shut off your throttle and get the steam out of the cylinders as quick as possible.

"Q. What about giving it the sand? A. Well that helps, when the brakes is set in emergency that helps, sliding your drivers.

"Q. Does that help you in stopping? A. Yes, sir.

"Q. How long did you wait before you gave it the sand? A. I couldn't say. It was all done so quick I couldn't say how long.

"Q. You didn't get the sand out until after you had struck? A. No, I don't believe I got the sand turned on until after I struck him. It was done so quick. I done everything.

"Q. That is all. You just answer the questions. When did you stop giving the short sharp blasts? A. I sounded the whistle when he was struck.

"Q. Did you then quit? A. I don't remember now, I guess I was by him before it quit.

"Q. You know when you struck him? A. Well, the fireman hollered at me and told me.

"Q. Then you stopped blowing the whistle? A. Yes, sir."

Other witnesses besides the engineer testified that the sand was not applied until the engine was beyond the point where deceased was struck. Deceased was thrown to the left of the track. The caboose was 10 or 12 feet from deceased when the train stopped.

A number of photographs of the scene of the accident are referred to in the record. They are taken from a height equal to that of the engineer in the locomotive. On the back of each is noted the number of rails north of the point of collision each was taken. A rail is 33 feet long. A lady stands in each picture at the point deceased was struck. She is plainly visible in photograph No. 5 taken from the north end of rail 38, 1254 feet from the point where deceased was struck. Photograph No. 6 was taken from the north end of rail 36, 1188 feet; photograph No. 7, 1122 feet; photograph No. 8, 858 feet. As stated, the engineer testified he saw deceased 900 feet away. It appears that the road bed extends only a foot or two beyond the ties and then slopes off. A person walking on the road bed to the left of the left hand rail would be in danger from a passing train. It would be apparent 900 feet away that deceased was on the road bed, as the engineer testified.

At the close of plaintiff's case the trial judge sustained a demurrer to the evidence in favor of defendant. Plaintiff has appealed, and the question presented is the sufficiency of the evidence to go to a jury

under Oklahoma law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

The Supreme Court of that state has often stated and applied the rules in cases arising from injuries to trespassers on railroad tracks. "To constitute actionable negligence, where the wrong is not willful and intentional, three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure." The last clear chance rule has been applied only in cases where defendant has discovered plaintiff's peril. "To establish liability under the so-called humanitarian doctrine, or doctrine of the last clear chance, it is necessary to prove: (1) That the person was in a place of danger; (2) that he was seen in such place of danger by the owner or an agent or servant of the owner; and (3) a failure thereafter to use ordinary care to avert injury." Atchison, T. & S. F. R. Co. v. Phillips, 158 Okl. 141, 12 P.2d 908, 909, and cases cited. See, also, Missouri Pac. R. Co. v. Gordon, Okl.Sup., 98 P.2d 39, decided September 19, 1939; Atchison, T. & S. F. Ry. Co. v. Howard, Okl.Sup., 98 P.2d 914, decided September 19, 1939.

Defendant railway did not owe deceased, a trespasser, the duty to discover him upon its road bed, but after the engineer observed him in a perilous position it was his duty to exercise ordinary care to avoid injuring him. Lusk v. Haley, 75 Okl. 206, 181 P. 727; Chicago, R. I. & P. R. Co. v. Pedigo, 123 Okl. 213, 252 P. 1095; Chicago, R. I. & P. R. Co. v. Owens, 78 Okl. 114, 189 P. 171; and cases cited supra. Negligence may be shown by circumstantial evidence and the inferences reasonably deducible therefrom. Missouri Pac. R. R. Co. v. Gordon, supra; A. T. & S. F. R. Co. v. Howard, supra; A. T. & S. F. Ry. Co. v. Phillips, supra.

Deceased was observed upon the road bed by the engineer at least 900 feet from the point where he was struck. There was a duty upon the engineer from that instant to use ordinary care not to injure him. The train was traveling 15 to 20 miles per hour. There is uncontradicted evidence that the train could have been brought to a stop in 200 to 225 feet at 20 miles per hour. Deceased was totally deaf. The engineer whistled repeatedly, but did not attempt to stop the train until practically the instant deceased was struck. The fact that the sand did not reach the track until the engine was beyond deceased shows that. Deceased did nothing to indicate he was aware of the approaching train and intended to step aside out of danger. The fatal accident could have been avoided by stopping the slowly moving train. In our opinion the evidence presented a jury question under Oklahoma law upon the issue whether defendant's engineer used ordinary care to avoid striking deceased after observing him in a perilous position upon the road bed, and the court below erred in sustaining defendant's demurrer at the close of plaintiff's case.

Reversed and remanded.

HUXMAN, Circuit Judge (dissenting).

I find myself unable to agree with my associates in the conclusion which they have reached in this case.

The deceased was a trespasser upon the right of way of the railroad company. The railroad company owed deceased no duty to use ordinary care to discover him on its tracks or to discover his dangerous position. It was under no obligation to defendant, a trespasser, other than not to injure him wilfully or intentionally when his peril came to the notice of the company. The duty of a railroad company not to injure a trespasser upon its right of way begins only when he is actually discovered in his position of peril, not when a reasonable, prudent person would have so discovered him. A. T. & S. F. Ry. Co. v. Phillips, 158 Okl. 141, 12 P.2d 908; Oklahoma R. Co. v. Overton, 158 Okl. 96, 12 P.2d 537; Missouri, K. & T. R. Co. v. Robnett, 57 Okl. 470, 157 P. 72; Atchison, T. & S. F. Ry. Co. v. Howard, 98 P.2d 914, decided by Oklahoma Supreme Court, Sept. 19, 1939; Missouri Pac. R. Co. v. Gordon, 98 P.2d 39, decided by Oklahoma Supreme Court, Sept. 19, 1939.

The only positive testimony adduced by plaintiff was the testimony of the engineer. He testified that he blew his whistle for the crossing just before rounding the curve, about 900 feet from the place of the accident; that in a second or two after sounding the whistle he rounded the curve and for the first time discovered deceased in a

position of peril; that he immediately set his brakes in emergency and sounded the stock alarm; that it was all done so quickly that he could not tell whether he set his brakes first or sounded the alarm whistle first. The engineer testified that the only thing that can be done toward stopping a train is to set the brakes, shut off the throttle and get the steam out of. the cylinders as quickly as possible. He testified that he did not know how long he waited before he applied the sand; that it was all done so quickly he could not say.

This is all the direct evidence as to what occurred. The only evidence as to any dereliction of duty on the part of the defendant company is inferences drawn from circumstantial testimony. Lester Hoffman, who lived about 75 steps west of the right of way, testified that he was working around his home; that he saw the train passing; that he watched it casually; and that in his opinion it was traveling from 15 to 20 miles per hour.

Lawrence Hoffman, his brother, testified that he was about 100 yards from the railway; that he saw the train pass; that he estimated its speed at about 15 miles an hour; that he did not see the train at the point of accident; that where he saw the train pass was about three-fourths of a mile from the place of the accident; that he never paid any attention to the train after it passed. There was testimony that a train traveling 20 miles an hour can be stopped within 250 feet.

Some photographs taken at the scene of the accident were offered in evidence. They were taken from a height approximating that at which the engineer would be sitting in his locomotive. Some of these pictures show a person standing at the approximate place where the accident occurred and show the person visible for approximately 1188 feet. These exhibits also show that at this distance it cannot be told where the person is standing with re-'lation to the rail. They do not reveal whether a person standing in such a position is outside of the line of danger or within the line of danger. The inference to be drawn from these exhibits is that the engineer saw deceased in a position of peril for a much greater distance than he testified to. The question is: When did the engineer first see deceased, not when would a reasonable, prudent person first have discovered him.

Plaintiff established by the positive testimony of the engineer when the engineer first saw deceased in a position of danger.

This accident occurred June 29, 1937. The Hoffman brothers testified in October, 1938, a year and a half later, as to the speed at which the train was going on this particular day. The testimony of both of them is that they only casually observed the train as it went by. No qualifying testimony was adduced showing that they had any knowledge or familiarity with trains or their speeds or that they were qualified in any way to estimate the speed of a locomotive. By this circumstantial evidence it is attempted to establish that the engineer was guilty of negligence, and the attempt is made to discredit his testimony that he applied the brakes immediately when he rounded the curve, but was unable to stop when he was 900 feet away.

A mere scintilla of evidence is not enough to require the submission of an issue to a jury. Before the evidence is left to a jury, there is a preliminary question for the judge to decide, not whether there is literally no evidence, but whether there is enough evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. Schuylkill & D. Improvement & R. Co. v. Munson, 14 Wall. 442, 448, 81 U.S. 442, 448, 20 L.Ed. 867; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. It has been decided that a scintilla of evidence will not support a verdict in the United States courts. Larabee Flour Mills v. Carignano, 10 Cir., 49 F.2d 151; Central Surety & Insurance Co. v. Murphy, 10 Cir., 103 F.2d 117.

It is the trial court's duty to direct a verdict at the close of the evidence where, although there is some conflict in the evidence, it is so conclusive that the court in the exercise of sound judicial discretion ought to set aside a verdict in opposition to it as rendered by a jury. New Amsterdam Casualty Co. v. Farmers' Co-Op. Union of Lyons, Kansas, 8 Cir., 2 F.2d 214.

The trial judge presided at this trial, he had an opportunity to observe the witnesses, their demeanor, their apparent intelligence, their conduct on the witness stand, their knowledge as to the things concerning which they testified, and in my opinion was in a much better position to determine whether the inferences to be drawn from the circumstantial testimony were sufficient

to overcome the positive testimony of the engineer so as to require a submission of the cause to the jury than is the appellate court.

The record in this case does not reveal to me that this positive duty resting on the trial court was abused. In my opinion the decision of the trial court should be affirmed.