GLADNEY, Judge.
Ernest Royal and Mrs. Daisy Quinn Royal instituted this suit to recover damages for loss of companionship and suffering on account of the death of their son, William Arthur Royal, who was killed by a train operated by the defendant. Prior to trial Ernest Royal died, thus leaving his widow, Daisy Quinn Royal, the single remaining plaintiff. Mrs. Royal has appeal *706 ed to this court from a judgment rejecting her demands.
Few of the facts involved are in dispute. Arthur Royal met his death about 2:45 A.M. on June 29, 1946, while he was lying prostrate and helpless in an intoxicated condition at Gandy, Sabine Parish, Louisiana, on the railroad tracks. The train which struck his body was traveling south at a speed of from fifty to sixty miles per hour. From the site of the accident, looking toward the north, the railroad tracks are straight and level for a distance in excess of one-half mile with no obstructions to prevent members of the train crew from having a clear vision of the track ahead.
Not a single witness testified as to seeing the train strike Royal. On the contrary, the members of the train crew testified they were unaware of having run over anyone until the second day thereafter when upon examination of the locomotive a piece of wood known as a “half-sole” was discovered missing from the pilot or “cow-catcher” and was found at the scene of the accident. The incident of finding the “half-sole” together with a small piece of blue cloth taken from a bolt under the engine and identified as coming from the deceased’s shirt, definitely identified the locomotive as the one that struck Royal’s prone body.
Gandy is a small rural community. Prior to 1940 a saw mill was in operation but ceased operations during that year. At the time of the tragic accident here involved about forty-five families lived within a quarter of a mile radius of the railroad crossing. The greater portion of these lived on the east side of the railroad tracks on which side was located the paved state highway, the only important artery by which vehicular traffic came to and left the community. The single place of business at Gandy was Mr. King’s store or commissary in which was located the post office. There was no depot and Gandy was not even a flag stop. The crossing upon which Royal met death was not a vehicular crossing, but was used by pedestrians who lived near by on the west side of the railroad for the purpose of going between their homes and the store and post office. A witness attempted to point out in certain photographs of the scene a foot path but the path does not appear “well beaten” as counsel contend in their argument. Some distance away from the pedestrian crossing there is another crossing — a dirt road — used by some-farmers traveling to and from their homes west of the railroad. This crossing is' vehicular and leads to the paved highway which is situated a short distance east of the railroad.
The most controversial evidence adduced relates to the atmospheric conditions at the time of the accident, that is whether or not fog was present. Several witnesses testified that during the early morning of June 29, 1946, it was a clear moonlight night, and others testified that when the train passed through Gandy there was fog which reduced visibility to practically zero.
After trial the district judge rendered judgment in favor of the defendant, assigning written reasons therefor. He concluded that the case presented but two principal issues for resolution and these were:
(1) What were the atmospheric conditions at Gandy at the time of the accident? and
(2) Considering the weather conditions existing at Gandy at the time of the accident and the degree of customary use by the public of the tracks at Gandy, what degree of care should have been exercised by the train crew in the operation of the train ?
In argument and brief, counsel for plaintiff concede that Arthur Royal was guilty of negligently placing himself in a position of extreme peril but they assert that such negligence had become passive because of his helpless condition and there was imposed upon the members of the train crew the duty of maintaining a strict vigil or lookout in the exercise of which they would have discovered the prone body of Arthur Royal in time to stop the train and thus avoid running over him. This *707 contention rests upon the doctrine of discovered peril or last clear chance, a humanitarian doctrine implying that the acts of humanity should prevent one from injuring another whom accident or his own negligence has placed in the path of danger from the normal acts of the other. Thus, the principle holds, where the injured person has negligently placed himself in place of peril, such peril will not defeat recovery where the railroad after discovery of his peril, or even where the railroad should have discovered his peril, has failed to exercise due care to avoid his injury. 75 C.J.S., Railroads, § 948. Moore v. Kurn, 10 Cir., 108 F.2d 906; Cheek v. Thompson, D.C.La., 28 F.Supp. 391, affirmed, 5 Cir., 140 F.2d 186; Russo v. Texas & P. R. Co., 1938, 189 La. 1042, 181 So. 485; Tillman v. Public Belt R. R. Commission for City of New Orleans, La.App.1949, 42 So.2d 888; Williams v. Missouri Pac. R. Co., La.App., 1942, 11 So.2d 658; Prince v. Texas & N. O. R. Co., La.App., 1939, 189 So. 291; Hicks v. Texas & N. O. R. Co., La.App., 1936, 170 So. 396; Neal v. Louisiana & Arkansas R. Co., La.App., 1944, 17 So.2d 374.
This rule is not without qualification. The principle does not apply unless after discovery or implied knowledge of the peril the employees of the railroad shall thereafter have had an opportunity to avoid the injury by the exercise of reasonable care under the circumstances and shall have failed to exercise such care thereby proximately causing the death or injury. 75 C.J.S., Railroads, § 949. Shaw v. Missouri Pac. R. Co., D.C.La., 39 F.Supp. 652; Cheek v. Thompson, D.C.La., 28 F.Supp. 391, affirmed, 5 Cir., 140 F.2d 186; Russo, v. Texas & P. R. Co., 1938, 189 La. 1042, 181 So. 485; Patterson v. Yazoo & M. V. R. Co., La.App., 1939, 187 So. 305; Hicks v. Texas & N. O. R. Co., La.App., 1936, 170 So. 396; Monk v. Crowell & Spencer Lumber Co., La.App., 1936, 168 So. 360.
During the trial certain witnesses testified that at the time and place of the accident the night was clear. Members of the train crew testified it was .very foggy with practically no visibility at the time Royal was killed. Whether there was fog or not is important as this factor determines whether the engineer of defendant’s train may be excused from having failed to see the body on the tracks. If. the night was clear as testified to by plaintiff’s witnesses, the evidence discloses that plaintiff should have stopped the train within 1,200-1,800 feet, which distance was within the range of the locomotive’s headlight. If, on the other hand, the fog was so dense that Mr. Richardson, the engineer, would not have, been able to bring his train to a stop after discovering the peril of Royal, he would be relieved of responsibility by the exception to the last clear chance doctrine as stated above. The record strongly indicates that neither Richardson nor any other member of the train crew knew until two days afterwards that their train had struck Royal. This fact seems so well established by the testimony that we are sure Richardson did not, in fact, see the body of Royal on the tracks.
Ray Davis and Otha Savelle testified that it was a clear moonlight night in the vicinity of the accident at about five or ten minutes until 1:00 o’clock A.M. These two witnesses testified that they were with Arthur Royal and took him home about 12:30 A.M. in a very intoxicated condition before he was killed. These witnesses lived within a mile of the crossing and testified there was no fog when they passed through Gandy about 12:30 nor was there any when they arrived at their respective homes about twenty minutes later. Marvin Powell, who lived within one hundred feet of the crossing where Arthur was killed, testified that he was awake when the train passed through and that he looked out from his house and clearly saw the train pass. He remembered it was a clear night with no fog. Mrs. Hazel Evans, who lived about six miles away, testified that she was outside her home near the railroad track when the train passed. She testified she could see the lights on the train and the night was clear and not foggy. Both Richardson, the engineer, and Bethel, the fireman on the train, testified positively that it was very foggy at Gandy at the time the train passed through.
*708 In considering' which testimony of these witnesses should be believed, it should be noted this suit was filed June 16, 1947, approximately a year after the accident on June 29, 1946. The trial of the case did not take place until January 25, 1954, over seven years later. We mention this because ordinarily there must be some reason why a witness can recall weather conditions some seven years after the accident. The credibility of one of plaintiff’s witnesses was weakened by impeaching testimony of C. W. Burkhart, an investigator for the railroad who testified that on the day after the death of Royal, Marvin Powell told him that at the time of the accident it was so foggy when he looked out of his window he could not clearly see the track. The testimony of Mrs. Evans must be accorded little, if any, probative value as it related to weather conditions which she said prevailed six miles from Gandy. In accepting the testimony of Richardson and Bethel as determinative of the question of fog, the trial judge made this comment:
“It is our opinion that the person in charge of the operation of the locomotive, traveling at a rate of speed somewhere about sixty miles an hour and driving blind, is in much better position to testify as to the atmospheric conditions on a particular occasion than a person who happened to wake up and look out of the door or window in the early morning hours.”
Burkhart’s prompt investigation within two days of the tragic manner in which Royal met his death and the atmospheric conditions prevailing at the time enhance the probability Richardson and Bethel would remember the foggy conditions at the particular time of the accident. Unless both of these witnesses are deliberately falsifying, their testimony should be given more weight than the testimony of the witnesses presented on behalf of plaintiff. As a rule courts will not impute perjury to an apparently credible witness. Cockrell v. Penrod Drilling Co., 214 La. 951, 39 So.2d 429.
For these reasons we find no error in the trial court’s conclusion it was foggy at the time of the accident. In describing the density of the fog, the engineer said: “Well, I would say that visibility was zero, as far as seeing ahead, because the rays of the headlights, in between it’s higher and these, between the rays of the headlight and the track, is where the fog is, where you can’t see any.” From the engineer’s cab even with clear visibility a portion of the track close to the locomotive cannot be seen as the view is obstructed by a part of the locomotive.
The courts of this state have repeatedly recognized that a locomotive is not necessarily required to reduce its speed during rainy or foggy weather. Griffin v. Thompson, La.App., 1942, 11 So.2d 114; Homeland Insurance Company v. Thompson, La.App., 1943, 12 So.2d 62; Tillman v. Public Belt R. R. Commission for City of New Orleans, La.App., 1949, 42 So.2d 888.
Forasmuch as the fact is established that it was so foggy when the train was passing through Gandy the tracks were not visible for any distance ahead of the locomotive it seems an inquiry into what rate of speed should have been maintained by the engineer would serve no useful purpose, or we could say as was stated by Judge Taliaferro in Pinckley v. Texas & P. R. Co., La.App., 1936, 165 So. 504, 506: “It is not pointed out, however, with any degree of certainty, how this complained of speed contributed to the accident, nor is it apparent to us that the accident would not have occurred had the train’s speed been much less.”
In Cone v. Smith, La.App., 76 So.2d 46, we said:
“Negligence alone in the operation of a motor vehicle does not give rise to a cause of action; in order to be actionable the negligence must result in injury or damage and then liability may only be imposed if such negligence is the, or a, proximate cause of the injury; that is to say—the injury must be the natural and probable conse *709 quence of a negligent act or omission, which an ordinarily prudent man ought reasonably to have foreseen might probably result in injury. See: 60 C.J.S., Motor Vehicles, §§ 251, 252; Railway Express Agency v. Knebel, Tex.Civ.App., 226 S.W.2d 922; Spratling v. Butler, 150 Tex. 369, 240 S.W. 2d 1016; Knops v. Ordorica, Tex.Civ.App., 242 S.W.2d 454.”
As it was pointed out in Hall v. Kansas City Southern R. Co., La.App., 1943, 14 So.2d 485, the controlling criteria in determining the proper speed of a railroad train and the degree of care to be exercised by its operators with respect to an incapacitated person on the track are the nature of the country, the density -of population, the use made of the track by pedestrians as a foot path, and the number of highway crossings in the vicinity. Counsel for appellant insist Gandy was a populous community, that pedestrians frequently used the track, and other conditions existed which required the railroad to materially reduce its speed in passing through. As pointed out above, we are of the opinion the speed of the train, even when operated slowly, would not have saved the life of Arthur Royal, but because of the importance attached by counsel to this issue we give it our attention
The evidence discloses the engineer, Richardson, upon approaching the crossing at Gandy gave the prescribed warning signals, but maintained a speed of from fifty to sixty miles per hour. In argument and brief counsel rely upon the ruling pronounced in Miller v. Baldwin, La.App., 1938, 178 So. 717, that where a person lies down on a track and from sleep, or intoxication, becomes unconscious of danger, and the track is in a city, urban section, or in a community where people frequently use the tracks as a footpath, and where there are several habitations and highway crossings, much greater care is required of the train operator to keep a lookout for such persons than in the open country. The accident occurred near Eunice, Louisiana, during the early morning hours when the train was traveling at a rate of forty-five or fifty miles per hour. At the time there was a light fog which could be pierced by the headlights of the locomotive for some distance. The opinion states where such conditions exist it is incumbent upon the train crew to reduce speed so that objects on the track can be discovered as soon as the light focuses on them and the train brought to a stop before injury is inflicted. The same decision was reached in Shipp v. St. Louis Southwestern R. Co. in Trusteeship, La.App., 1939, 188 So. 526. Recovery has been denied, however, in cases where the train was passing through a sparsely settled section. See: Pinckley v. Texas & P. R. Co., supra; Bourgeois v. New Orleans T. & M. R. Co., La.App., 1940, 193 So. 394; Hall v. Kansas City Southern R. Co., supra; Neal v. Louisiana & Arkansas R. Co., La.App., 1944, 17 So.2d 374, 377.
The circumstances present in the instant case have convinced us it was not unreasonable for the engineer to assume pedestrians would not be on the track in Gandy at the hour of 2:45 A.M. In fact, Richardson testified that in his many years of experience in passing through this community during early morning hours he had never seen any person on the tracks. In his discussion of this issue the district judge adopted for his own the following conclusion from Neal v. Louisiana & Arkansas R. Co., supra.
“We have found that the vicinity of the accident was not thickly populated, nor were the tracks customarily or habitually used by any appreciable number of individuals. * * * We find nothing in the facts of the case before us which would indicate the applicability of the doctrine of the last clear chance.”
Though, as stated above, we fail to attach importance to the relevancy of the rate of speed of the locomotive in view of the extreme foggy condition reducing visibility to zero, our study of all the evidence, adduced herein has led us to the conviction the use of the railroad tracks at the place of the accident was not of such frequence *710 as to impose upon the train crew a duty to reduce the speed of its train when it passed through the community.
For the foregoing reasons we find no error in the findings of the trial court, which concluded:
(1) That at the time and place of the accident it was very foggy; (2) that the facts disclosed by the record impel this conclusion that the locomotive engineer was under no legal duty when he approached Gandy on the morning of June 29, 1946, to reduce the speed of his train.
It, therefore, follows that defendant can not he held liable for damages and the judgment from which appealed should be affirmed at plaintiff’s cost.