AYRES, Judge.
Plaintiffs, father and mother of John Lee Hollinquest, about 16 years old, brought this tort action to recover of the defendant $40,150 damages alleged to have been sustained by them as the result of the death of their son.
They alleged that on the night of July 24, 1953, about 11:40 o’clock P. M., their son was lying on defendant’s railroad line between and parallel to the rails, and that while in this position he was struck and instantly killed by one of defendant’s trains. They also alleged that their son was in such a physical condition due to causes unknown to them that he was neither aware of the danger of his position nor cognizant of his peril and that he was unable to get off the track by his own power of locomotion before defendant’s train struck him. Plaintiffs charged defendant with the following acts of negligence.
1. Failure to so regulate the speed of its train as to be able to stop it on the sudden appearance of a person in an incapacitated condition on its track;
2. Failure to give proper signals, and
3. Failure to keep a proper lookout for objects on its railroad line.
*569 In the alternative, plaintiffs invoked the discovered peril or last clear chance doctrine on the theory that defendant’s train crew saw or should have seen decedent’s position and peril in time to stop the train before striking him.
Defendant denied that it was negligent in the operation of its train. It averred that John Lee Hollinquest was dead when struck by its train, and if not dead at the time of the accident, the proximate cause of his death was his own gross negligence in failing to use his own sense of sight or hearing to protect himself from harm or injury and in placing himself voluntarily and unnecessarily in a position of peril and danger on defendant’s railroad or between the rails of its main line track. Contributory negligence of decedent was specially pleaded.
In rejecting the demands of plaintiffs, the trial court said:
“This case presents a rather unusual situation of facts, but the undisputed facts are that the boy, John Lee was lying some 120 or 150 feet East of the Grambling crossing, parallel with the railroad ties, and wearing dark clothes, that he was seen by the engineer operating the train some 200 feet before the train ran over and destroyed his body, and from the testimony of the expert witnesses and the jurisprudence, the train could not have been stopped within that distance, nor could it have been stopped in less than 1,200 feet. The engineer or brakeman could not see a person standing erect until they reached within 800 feet of said person, and it is to be recognized that a person lying along the rails could not have been seen within that distance, or possibly less than half that distance. The Court is convinced that the plaintiffs have failed to make out their case by a preponderance of evidence, even though there exists certain elements which might show the defendant liable, but this evidence is not sufficient to overcome the burden that rests upon the plaintiffs.”
From the judgment, plaintiffs appealed.
Defendant’s railroad line extends generally east and west through Lincoln Parish and through the unincorporated Village of Grambling therein. A state asphalt topped highway runs north and south, constituting the main street of the village, and crosses the railroad in a northern section of the village. About 100 feet east of the aforesaid crossing begins a deep railroad cut of an average depth of approximately 10 feet, with an average width from 50 to 60 feet. Within the cut on the north side of the track is a drainage ditch about 4 feet deep and 15 feet wide in the immediate vicinity of the spot where decedent’s body was first struck. This ditch increases in depth and in width to approximately 30 feet as it extends about 500 feet east of the crossing.
Two houses are located on the north bank of the aforesaid railroad cut and two others on the south side of the railroad tracks, all of which are inaccessible to the railroad except by first proceeding to the aforesaid highway and entering the cut at or near the crossing. These four are the only houses in the immediate vicinity of the cut; however, others are more distantly removed. There are four stores in the village on the south side of the track, the nearest about 30 feet from the railroad right of way, and one store on the north side.
The community making up the Village of Grambling centers around Grambling College, the campus of which is located 900 feet south of the railroad right of way. Grambling College has an enrollment of 1735, 1100 of whom live on the campus and another 150 in the immediate community, and exclusive of these, the village has a population of 675. Notwithstanding, however, the immediate scene of the accident was not in a densely populated community (being to the north of the principally populated area) within the rule requiring railroads to exercise a high degree of care in the operation of their trains and to have their trains under such control as to be able to bring them to a stop should an emergency arise. The evidence does not show frequent and ex* *570 tensive use of defendant’s tracks as a footpath. The few houses alongside the embankment can not be reached by use of the tracks due to the railroad cut and the ditch.
An analysis of the testimony warrants the conclusion there was no well beaten path on or along the railroad tracks and that the accident did not happen in a thickly populated or suburban area. The findings here as to the physical surroundings of the scene of the accident are similar to the facts found and described by this court in Neal v. Louisiana & Arkansas Ry. Co., 17 So.2d 374, 376, wherein it was stated:
“ * * * there are no foot-paths or trails along or across the railway tracks in the vicinity of the accident, nor is there any conclusive evidence which would indicate that the tracks were used to any material extent or degree by pedestrians. Indeed, there is no evidence there was any reasonable or practical necessity for the use of the tracks in proceeding from one given point to another, even in the nature of shortcuts between any defined points”.
Defendant’s railroad track was straight for a considerable distance from the west, from which defendant’s train approached, and for approximately a quarter of a mile east of the aforesaid crossing. The decedent was last seen alive by a companion, who left him between 11:00 and 11:30 P.M., sitting on a concrete block on the railroad right of way near the railroad crossing. The companion and the proprietor of a store, where they visited shortly before their separation, testified that decedent appeared normal, was not drinking and apparently jolly and in good spirits.
Defendant’s contention that decedent was dead before its train struck the body was not established by the evidence and was so rejected by the trial judge, with whose finding we are in full accord. The testimony of the decedent’s uncle to the effect that shortly prior to the accident two unknown parties placed an object upon the railroad tracks and hurried away was not sufficient to establish that, if such an object was placed on the track, it was deceased’s body or that decedent was then dead. Such an occurrence did not create suspicion in the uncle or arouse sufficient interest or curiosity to cause him to investigate, which would appear the natural and probable thing for any one to do under the circumstances.
In order to establish negligence on the part of the defendant, it is incumbent upon plaintiffs to establish some acts of commission or omission on the part of defendant’s employees as operators of the train involved in the accident. In this plaintiffs have completely failed. The immediate vicinity of the accident was not thickly populated and the very nature, extent and location of the so-called business district of the village and of the college and surrounding residential area relieved defendant’s employees of any liability on the ground of excessive speed. The speed of approximately 40 miles jper hour at the time and under the conditions surrounding the accident, which were not shown to be unusual in any respect, was not in itself negligence. The evidence establishes that the usual, proper and legal warning signals were given by the crew of the train of its approach to the crossing, as required by law. Moreover, it appears that due to the approach of a school bus to the crossing, the train crew’s particular attention was attracted, causing pronounced and continued warning signals to be given.
The train was about entering the crossing when the engineer first discovered that a body, 150 to 200 feet away, was lying between the tracks, afterwards disclosed to have been dressed in dark clothing. Clothed as it were and lying between the tracks and even with the expectation of finding a body thereon, with a strained vision, the engineer testified it would have been impossible to have discovered the body in time to stop the train and avoid the accident. The testimony of experts, whose training and experience qualify them to' testify, shows that a train of 58 cars, *571 as this one consisted of, running at a speed of 40 miles per hour on a descending grade, could not be stopped in less than 2,500 feet, and that at a speed of 20 miles per hour, a stopping distance would be between 1,200 and 1,500 feet, and at 10 miles per hour the stopping distance would be reduced to 900 to 1000 feet. This evidence, based on actual experience and tests, was to the effect that a body the size of decedent’s, dressed in dark clothing, between rails and in the position in which this body was lying, could not be discovered by the train crew, within a distance less than some 250 to 300 feet. Even at a much slower speed than this train was operating, it would have been impossible to stop the train and avert the accident. The speed of the train was therefore not the proximate cause of the accident and it contributed nothing to it. The proximate cause of the accident was the gross negligence of the decedent in placing himself on the tracks of the defendant in a position where his presence could not be discovered by the train crew in time to prevent striking him.
In Royal v. Kansas City Southern Railway Co., La.App., 75 So.2d 705, involving a death at Gandy, Louisiana, the facts of which are very similar to the facts of the case now before us, except the speed of the train there was from 25 to 50 percent greater, this court recently had occasion to state:
“As it was pointed out in Hall v. Kansas City S. Railway Co., La.App. 1943, 14 So.2d 485, the controlling criterion in determining the proper speed of a loaded train and the degree of care to be exercised by its operators with respect to an incapacitated person on the track are the nature of the country, the density of population, the use made of the track by pedestrians as a footpath and the number of highway crossings in the vicinity. Counsel for appellant insist Gandy was a populous community; that pedestrians frequently used the track, and other conditions existed which required the railroad to materially reduce its speed in passing through. As pointed out above, we are of the opinion the speed of the train, even when operated slowly, would not have saved the life of Arthur Royal * * *
The issues and principles of law there involved, the same as here, were stated by us in this language:
“In argument and brief, counsel for plaintiff concede that Arthur Royal was guilty of negligently placing himself in a position of extreme peril but they assert that such negligence had become passive because of his helpless condition and there was imposed upon the members of the train crew the duty of maintaining a strict vigil or lookout in the exercise of which they would have discovered the prone body of Arthur Royal in time to stop the train and thus avoid running over him. This contention rests upon the doctrine of discovered peril or last clear chance, a humanitarian doctrine implying that the acts of humanity should prevent one from injuring another whom accident or his own negligence has placed in the path of danger from the normal acts of the other. Thus, the principle holds, where the injured person has negligently placed himself in place of peril, such peril will not defeat recovery where the railroad after discovery of his peril, or even where the railroad should have discovered his peril, has failed to exercise due care to avoid his injury. * * * ”
“This rule is not without qualification. The principle does not apply unless after discovery or implied knowledge of the peril the employees of the railroad shall thereafter have had an opportunity to avoid the injury by the exercise of reasonable care under the circumstances and shall have failed to exercise such care thereby proximately causing the death or injury.”
See the authorities therein cited.
In the cited case, as here, counsel relied heavily upon the ruling pronounced in *572 Miller v. Baldwin, La.App., 178 So. 717, with reference to which the statement made by us in the Royal case is applicable here. We stated:
“The evidence discloses the engineer, Richardson, upon approaching the crossing at Gandy gave the prescribed warning signals, but maintained a speed of from fifty to sixty miles per hour. In argument and brief counsel rely upon the ruling pronounced in Miller v. Baldwin, La.App.1938, 178 So. 717, that where a person lies down on a track and from sleep, or intoxication, becomes unconscious of danger, and the track is in a city, urban section, or in a community where people frequently use the tracks as a foot-path, and where there are several habitations and highway crossings, much greater care is required of the train operator to keep a lookout for such persons than in the open country. The accident occurred near Eunice, Louisiana, during the early morning hours when the train was traveling at a rate of forty-five or fifty miles per hour. At the time there was a light fog which could be pierced by the headlights of the locomotive for some distance. The opinion states where such conditions exist it is incumbent upon the train crew to reduce speed so that objects on the track can be discovered as soon as the light focuses on them and the train brought to a stop before injury is inflicted. The same decision was reached in Shipp v. St. Louis Southwestern Ry. Co. in Trusteeship, La.App.1939, 188 So. 526. Recovery has been denied, however, in cases where the train was passing through a sparsely settled section. See: Pinckley v. Texas & P. Ry. Co., supra [La.App., 165 So. 504] ; Bourgeois v. New Orleans T. & M. Ry. Co., La.App. 1940, 193 So. 394; Hall v. Kansas City Southern Ry. Co., supra [La.App., 14 So.2d 485]; Neal v. Louisiana & Arkansas Ry. Co., La.App. 1944, 17 So 2d 374.”
Our conclusion is that the discovered peril or last clear chance doctrine has no application here inasmuch as it has not been shown that defendant’s employees were guilty of negligence or that by the exercise of reasonable diligence the deceased could have been discovered upon the tracks in time to have stopped the train and avoided striking him.
We find no error in the judgment appealed from insofar as it rejects plaintiffs’ demands. The suit having been instituted, filed and prosecuted pursuant to LSA-R.S. 13:4525, relieving the plaintiffs from the payment of costs or furnishing security therefor, the judgment condemning them for costs will necessarily have to be set aside. Causey v. Opelousas-St. Landry Securities Co., Inc., 192 La. 677, 188 So 739.
For these reasons, the judgment appealed from is amended by relieving appellants from the payment of court costs, and, as thus amended, is affirmed.